## Higgins, et al. v. Sowards.

(Decided September 29, 1914.)

### Appeal from Marshall Circuit Court.

1. **Mortgages—Compounding Felony—Validity of Mortgage Given Therefor.**—In order to avoid a mortgage given to prevent a prosecution for a criminal offense, there must be shown as an inducement for the execution of such mortgage, a promise not to prose-

cute. Mere ·apprehension of such prosecution is not enough to
render void a mortgage given in settlement of money due from a
fire insurance agent to the companies represented by him.

2.  Mortgages—Requisites  and  Validity.—A  note  and  mortgage
executed for the purpose of paying money due from a fire insur-
ance agent to the companies represented by him, are not void
where there is ho agreement not to prosecute although there may
have been an intimation that there would be a prosecution unless
such settlement was effected.

SHEMWELL & REEDER for appellant.

LOVETT & FISHER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

· R. L. Wade, was local agent for a number of fire as-
surance companies in the town of Benton. He failed to
make prompt settlement of his accounts with the com-
panies which he represented. William Sowards, State
Agent for one of the companies, acting for his own and
for the other companies interested, made a settlement
with Wade. The agency was sold, and after applying
upon Wade's indebtedness to the companies the sum
received therefor, he still owed them three hundred and
sixty-five dollars.

In payment thereof, he executed a note payable to
Sowards. F. A. Higgins and Mary S. Higgins, the par-
ents of Wade's wife, signed this note as joint makers
with Wade, and to secure same, they executed to So-
wards a mortgage upon certain real estate owned by
them.

In January, 1913, the note not being paid, this suit
was instituted in the Marshall Circuit Court to enforce
the lien of the mortgage. The defense was that the exe-
cution note and mortgage by Mr. and Mrs. Higgins was
induced and obtained by duress and for the purpose of
compounding a felony and preventing the prosecution
of their son-in-law for embezzlement. Upon submission
and trial, the chancellor rendered and entered a judg-
ment decreeing an enforcement of the lien of the mort-
gage, and from that judgment this appeal is prosecuted.

1. It is first insisted by appellants that appellee
had no right to maintain the action in his own name.
The contract, however, was made in his name; and the
general rule is that when a contract is entered into with
an agent in his own name, the promise being made di-
rectly to him, he may maintain an action on such con-

tract without joining the person beneficially interested. 31 Cyc., 622. Moreover, section 21 of the Code of Civil Practice contains express authority for the bringing of the action by Sowards in his own name and right.

2. It is next contended that the note and mortgage in question were executed pursuant to an agreement for the compounding of a felony and to prevent the prosecution of the son-in-law of appellants for embezzlement. But the testimony of appellants fails to disclose such agreement.

Sowards testified that Wade took him to see appellants. He said: "When Mrs. Higgins was introduced to me she at once spoke up and says, 'You boys come out here to get me to do something, and we have consulted attorneys and know our rights.' I says: 'Mrs. Higgins, my visit to you is foreign in substance of that kind; I came here solely at the request of Mr. Wade.' She had mentioned prosecution. I says, 'So far as prosecution or anything of that kind was concerned, I had no intention of referring to it; but I want to explain to you that it will be pretty hard for Mr. Wade to get along and go out in the world with this heavy debt hanging over him, and it seems to me if you could help him, you should on account of your daughter.' She said: 'No, sir, I will do nothing;' and I bid her good-bye and left."

Sowards had no further conversation with appellants, but it seems that they later executed the note and mortgage and same were sent to him.

Mr. Higgins testified that he had been police judge of the town for four years and was at the time serving as marshal thereof; that he had a conversation with Sowards in Wade's office; that "he (Sowards) said, 'I understand you are Mr. Wade's father-in-law.' I told him, 'Yes, sir.' He said, 'Wade is short in his accounts.' I said, 'Yes, sir.' He says, 'He has collected our money and spent it; he is in pretty bad shape, and I am sorry for him; and will you sign this note, you and your wife?' I said, 'Mr. Sowards, I have about as many to take care of now as I am able to take care of; I am getting old and crippled, and I was not able to pay Mr. Wade's debts; if he has violated the law, he will have to take his medicine himself; I can not take it for him.' He says, 'Well, I have waited on him about two weeks to get this matter settled, and there's got to be something done, and that pretty damned quick or he will have

to take his medicine,' or words to that effect; I don't know exactly that he used that language." Mr. Higgins admitted that he advised with two attorneys and that they said they were not sure, but they didn't believe Wade was guilty of any violation of law.

Mrs. Higgins testified that when Sowards came to her home, he said: "Mrs. Higgins, you don't want your son-in-law placed in a condition so he can't make a living for your daughter;' and I said, 'I certainly do not, but I do not think they can hurt him.' Then he (Sowards) said, 'Ah! those lawyers will tell you anything; I have a number of such cases.' "

Upon this evidence, the chancellor declined to cancel the note and mortgage, and we are not inclined to disturb his finding. It is evident that appellants were not induced to execute the note and mortgage by way of compounding a felony. Waiving the question of whether Wade was guilty of any offense, the evidence of appellants does not show any promise upon the part of appellee not to prosecute Wade, inducing the execution of the note and mortgage sought by the appellants to be avoided. As was said by this court in Powell v. Flanery, 109 Ky., 342, 22 R., 908, 59 S. W., 5, "A mere intimation, or even a threat to prosecute, would not in all cases avoid a contract made by the defaulter for the purpose of making reparation to the person injured by his misdoings, if there is no agreement not to prosecute."

Judgment affirmed.