Coon, Appellant, vs. Metzler, Respondent.

*September 15—October 5, 1915.*

*Duress: Threats of criminal prosecution: Payment of money after interval: District attorney: When should not be attorney in civil action.*

1. To constitute duress a person must be so strongly influenced that his acts are not the result of his own will; but acts or threats which might fall short of duress under certain conditions might be ample under others, much depending on the situation of the parties, their relations to each other, physical and mental strength, and all the surrounding circumstances.

2. The mere fact that several days elapsed between the making of threats and the payment of money does not conclusively negative duress in such payment.

3. Threats of prosecution made by a district attorney differ materially from similar threats made by a layman or private attorney in that they bear the added weight of the power vested in that officer to institute, and to a certain extent control, criminal prosecutions.

4. Where in an action to recover money alleged to have been paid under duress there was evidence that plaintiff, an innocent man, who had been found in a somewhat compromising situation with a married woman, was repeatedly threatened by the district attorney with prosecution and conviction of adultery, and under the stress of such threats gave his note for $800 to settle the

matter, after which he went to a distant state, procured the money, and paid the note within twenty days, believing that the prosecution would proceed if he did not, it could not be said as matter of law that there was no duress in such payment, and a nonsuit was improper.

5. It is inadvisable, if not improper, for a district attorney to act as attorney to recover civil damages arising from a supposed criminal act.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Marquette county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This is an appeal from a judgment of nonsuit. The action was brought to recover money alleged to have been paid under duress of threatened criminal prosecution. The defendant claimed by his answer that the money was paid to settle a claim for civil damages. The evidence on the part of the plaintiff tended to show these facts: That the defendant at the time of the occurrences involved in the action was an attorney at law residing at Montello, Marquette county, and was the district attorney of said county (this is admitted); that the plaintiff in April, 1914, was a married man forty-seven years of age, residing in the village of Endeavor in said county, and was a buyer of stock and produce; that on Friday, April 3, 1914, he went to the house of a neighbor named Baker for the purpose of using Baker's telephone, and became engaged in conversation with Baker's wife; that while standing near Mrs. Baker, Mr. Baker came in the house and immediately accused plaintiff of having his arm around Mrs. Baker, which plaintiff denied; that on the following morning plaintiff started for Montana with a carload of stock which he had previously collected, on a train which left Endeavor at 4:30 o'clock a. m.; that Mrs. Baker was on the train and sat in the seat with the plaintiff, but left the train at Westfield, twelve miles from Endeavor; that on the same day Baker communicated with the defendant,

who immediately came to Endeavor and consulted with Baker concerning the supposed undue intimacy between plaintiff and Mrs. Baker, and was retained by Baker; that when plaintiff reached Stevens Point he had telephone conversations with his daughter and with one Churchill at Endeavor, who both advised him of defendant's visit to Endeavor and his consultation with Baker and advised plaintiff to return, and that it was understood that Baker and *Metzler* had papers made out for his arrest and to bring him back (there is, however, no evidence that either of these communications was authorized by or known to the defendant) ; that the plaintiff went on with his car of stock to St. Paul, and on the 6th of April started back and telegraphed the defendant to meet him at Portage on the arrival of the afternoon train; that *Metzler* and Baker went to Portage and met the plaintiff; that they all went to the law office of defendant's brother in Portage, where plaintiff and *Metzler* went into a private room and had a conversation; that *Metzler* accused him of adultery with Mrs. Baker and stated that he could prove it by Mrs. Baker, who would swear to anything he wanted; that defendant threatened to commence a criminal action therefor and send the plaintiff over the road if he didn't settle up, and told him that a thousand dollars would settle it; that he refused to pay that sum and offered $500; that after more talk and threats of criminal prosecution *Metzler* agreed to take $800, and finally plaintiff signed a note payable in fifteen days for $800; that *Metzler* repeatedly said that if the note was not paid when due he would go ahead with the criminal prosecution and send the plaintiff over the road; that plaintiff was nervous, excited, and "pretty well scared" by these threats; that he finally signed a note due in fifteen days for $800 payable to the defendant and promised to pay it as soon as he sold his cattle; that he took a receipt signed by Baker (the condition of the record seems to leave it doubtful whether the receipt was received in evi-

dence, but its contents appear sufficiently to show that it was a release from all claim for damages by Baker for an indecent assault on his wife); that plaintiff did not read the receipt, and that he returned on the same night to St. Paul and went on with his stock to Glendive, Montana, where he disposed of his stock; that he had no friends or relatives at Glendive, that he was not feeling well, lost in weight, and did not sleep well because he was worrying about the matter; that in about twenty days he sent the money to defendant to pay the note and the note was returned to him and destroyed by him; that he thought he had to pay the note or submit to a criminal prosecution by the defendant; that he met a Mr. Fish, his brother-in-law, in St. Paul, who told him he was foolish to pay the note; that he (plaintiff) told Fish that if he didn't pay it he would be criminally prosecuted and sent over the road; that he took no advice of any lawyer, although he could have done so in St. Paul or in Montana.

*D. W. McNamara* and *John A. Conant,* for the appellant.

For the respondent there was a brief by *Metzler & Metzler,* attorneys, and *Grady, Farnsworth & Kenney,* of counsel, and oral argument by *D. H. Grady.*

WINSLOW, C. J. The plaintiff's evidence may not be true; it is certainly to be hoped that it is not true. It is not incredible, however, and, for the purpose of the motion for nonsuit, must be treated as true. In brief, the case made by the plaintiff is this: An innocent man, found in a somewhat compromising situation with a married woman, is repeatedly threatened by the district attorney of the county with prosecution and conviction of adultery, and under the stress of such threats gives his note for $800 to settle the matter and at once goes to a distant state, procures the money to pay the note, and remits it to the defendant within twenty days, without advising with counsel and because he believes the prosecution will proceed if he does not do so.

It certainly would be a reproach to the law if such things can be done with impunity. The law is neither so weak nor so unjust as this.

Duress is a relative rather than a positive term. Much depends on the situation of the parties, their relations to each other, physical and mental strength, and all the surrounding circumstances. Acts which might fall far short of duress under certain conditions might be ample under other conditions. The threat of an enraged boy to commence a criminal prosecution might be unworthy of notice; the same threat by a man of experience in the world might well cause anxiety; while the same threat by the state's official prosecutor could hardly fail to cause deep solicitude if not actual terror. It is apparent also that a threat which would have no serious effect on a strong, experienced business man would be terrifying in the extreme to a nervous or weak person with little or no experience in the world. There are no arbitrary and unbending rules which can be applied in every case to determine the question. True, the person claiming duress must be so strongly influenced that his acts are not the result of his own will, but the threats which would accomplish that result in one case might be entirely insufficient in another.

It was correctly said in *Galusha v. Sherman,* 105 Wis. 263, 278, 81 N. W. 495:

"There is no legal standard of resistance which a party so circumstanced must exercise at his peril to protect himself. The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained?"

Much reliance is placed by respondent upon the fact that the plaintiff went to another state, where he could advise with attorneys if he chose, and remained there two or three weeks before paying the note. During this time there was

no communication between plaintiff and defendant, and it is said that under such circumstances there could be no duress as a matter of law. The cases of *Wolff v. Bluhm,* 95 Wis. 257, 70 N. W. 73; *Rochester M. T. Works v. Weiss,* 108 Wis. 545, 84 N. W. 866; and *Bennett v. Luby,* 112 Wis. 118, 88 N. W. 37, are relied on to support this contention.

It is true that in each of these cases it was held that no duress was shown and that in each case the fact that several days elapsed between the making of the threats and the payment of the money was considered as an important consideration in reaching the result. This is far from saying, however, that such a fact will in all cases negative duress, and such a holding would manifestly be illogical. The ultimate test after all is the condition of mind produced by the threats and existing at the time of the payment. It may well be that the lapse of a year or more without renewal of the threats (as in the case of *Schultz v. Culbertson,* 46 Wis. 313, 1 N. W. 19) between the giving of the note and its payment should be held to be conclusive against any claim of duress in the payment, but in the last named case it was wisely said that "perhaps a jury would be warranted in finding that the original duress continued" had the note been paid soon after it was given.

The case before us is quite out of the ordinary in the fact that the threats of prosecution and conviction were made, if made at all, by the law officer of the state whose duty it is to prosecute criminal offenses. Threats of prosecution made by the state's attorney differ materially from similar threats made by a layman or private attorney in that they bear the added weight of the power vested in that officer to institute, and to a certain extent control, criminal prosecutions; a power which is often exaggerated in the mind of the layman. It is very easy to understand that such a man as the plaintiff might have his free will absolutely coerced by a district attorney's threat of prosecution, and it is easy to see also how

the influence of such a threat might remain for two or three weeks and while the coerced party was actually in a foreign state, for the functions of requisition proceedings are very generally understood and the district attorney's power over such proceedings thought to be plenary. In view of these exceptional circumstances we think the case should have gone to the jury, and we do not consider that this holding in any way overrules the cases previously cited herein and relied on by the respondent as justifying the nonsuit.

We cannot close this opinion without remarking on the inadvisability, almost amounting to impropriety, of the district attorney acting as attorney to recover civil damages arising from a supposed criminal act.

In such matters the prosecuting attorney of the state cannot serve two masters. Justice is his sole client, and any private retainer which in any way tends to sway his judgment or distort his vision as to the character of the act should be sedulously avoided.

The distinction between civil and criminal liability is apt to be much confused in the lay mind, as well as the distinction between an attorney's acts in his capacity as a public prosecutor of crime and his acts as a private attorney. The code of ethics of the district attorney in all such matters cannot too closely follow the ethics of the bench; indeed, his duties are *quasi*-judicial in their nature.

As said in the beginning, it is to be hoped that the plaintiff's story is not true, and that the district attorney will be able to show that he has not been guilty of the indefensible conduct charged. When such charges are afloat he should welcome the opportunity to meet and crush them. He will have that opportunity now.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

BARNES, J. (*dissenting*). The rule is well established that the court will not reverse a decision of the trial court

granting a nonsuit or directing a verdict unless such decision appears to be clearly wrong.

It is equally well established that in order to constitute legal duress the threats used must produce such a condition of mind as to destroy the free agency of the person threatened. *Batavian Bank v. North,* 114 Wis. 637, 90 N. W. 1016; *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495; *Wolff v. Bluhm,* 95 Wis. 257, 70 N. W. 73.

When the plaintiff gave the note he had sufficient control of his mental faculties to dicker considerably about the price to be paid. After that he had about three weeks to think it over, during which time he went to a neighboring state and counseled with his brother-in-law. After having this period for reflection and deliberation he paid the note. It seems to me that the trial court might well conclude that the mind of this banker and stock-buyer was not in such a condition that he was not acting as a free agent when he paid the note. Leastwise, I do not think it should be said that the circuit judge was clearly wrong in reaching such a conclusion.

If the testimony of the plaintiff is true, the conduct of the district attorney was more than reprehensible. In any event it is subject to just animadversion. The court is of the opinion that it would be a reproach upon the law to deny recovery in this case if plaintiff's version of the transaction with the defendant is true. I do not think so, unless an actual case of duress is made out. On plaintiff's evidence he is a briber pure and simple unless his will power was overcome when he paid the note. He paid the prosecuting officer $800 as a bribe to secure immunity from prosecution for adultery. He is as "deep in the mud" as the defendant is "in the mire," and the law should leave him where it finds him. There are other methods of dealing with the defendant if he has been guilty of the misconduct claimed.