KIEVE ARONOFF and META ARONOFF, Respondents, v. JACOB LEVINE and ROSIE LEVINE, Appellants.

Second Department, December 29, 1919.

Equity — suit to set aside mortgage obtained by duress — filing outlawed mechanic's lien for purpose of extorting mortgage — compromise effected by coercion — he who seeks equity must do equity.

The defendant, having done work upon a building owned by the plaintiff and having a claim for only $112 balance due, filed a mechanic's lien for over $2,000 upon the building more than six months after the completion of the work so that such lien was invalid under the statute and at a time when the plaintiff was endeavoring to place a second mortgage on the building in order to raise money to pay a judgment in favor of another lienor, which mortgage he was unable to place owing to the defendant's lien. The defendant then insisted that the plaintiff and his wife execute a mortgage, which was to be a third lien on the property, for $1,500 and also demanded a cash payment of $200 as a consideration for releasing his lien and executing an estoppel certificate. *Held*, that the mortgage given to the defendant should be set aside in equity as obtained by duress. In the circumstances equity will give such relief even though the mortgage to the defendant was executed without protest or express reservation, for the fruits of such fraudulent oppression should not be upheld. Because the coercion involving such elements took the form of a compromise it is not beyond equitable relief.

However, in decreeing a rescission of the mortgage the defendant should be placed in *statu quo* and hence the plaintiff is not entitled to keep the defendant's general release.

APPEAL by the defendants, Jacob Levine and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Queens on the 25th day of January, 1919, upon the decision of the court setting aside a bond and second mortgage upon the ground that it had been procured under duress practiced on the plaintiffs.

The mortgage in question with $200 cash was given to defendant to discharge an alleged mechanic's lien by Jacob Levine for $2,440, dated January 24 and filed January 29, 1918. As found by the court, it had been oppressively extorted when only $112.66 was owed Levine.

*I. Maurice Wormser* [*Louis Rosenberg* with him on the brief], for the appellants.

*Joseph A. Whitehorn,* for the respondents.

PUTNAM, J.:

Plaintiff Kieve Aronoff, a candy salesman, and Levine, a carpenter by trade, started as joint adventurers to build three houses in the second ward of the borough of Queens. Plaintiff already had the land. He was to put in $2,000 and Levine was to put in $500 as a sum to cover all the carpenter work. He was also to supervise the work in the joint interest, without any additional compensation. A formal agreement to this effect was prepared by an attorney in October, 1916, but never signed.

For a structure as a garage, Levine was to have $100 additional. However, from the estimate of 1916 for $15,000, the cost actually amounted up to about $19,000.

Levine had put off signing the written agreement, and as plaintiff testified, near the completion of the work, Levine told plaintiff he would take the balance due from the $600 " and you can keep the houses for yourself." Levine's contrary version is, that in the beginning he wanted the security of part owner on the record; that at an interview on the day before Thanksgiving, Aronoff said: " All you are going to put in is $500 and your time. * * * I will make you a better proposition. From the time that you start on the job, I will pay you $40 a week for your superintendence, and

$500 for the buildings, and $100 for the garage." Levine insisted that thereafter he acted as "full superintendent on the job," buying material, and hiring other contractors. In July the construction was completed, so that tenants moved in, but Levine claimed that later in the fall, plumbing work was going on, also that he had collected rent from the tenants and paid it to Aronoff. Levine also testified that in January, 1918, he asked payment from plaintiff, who promised it from the avails of a second mortgage for which he was then negotiating.

Koppelman & Avarock, a plumbing firm, foreclosed a lien on these houses for $1,740. On that trial, January twenty-second, Levine, called as a witness, testified that $600 was what he was to get. Later, after the trial, Levine consulted the attorney for these plumbers, who prepared a notice of lien for Levine's work and superintendence, claiming $2,440, which was filed January 29, 1918. When Aronoff sought to raise money on a second mortgage, the search disclosed this lien of Levine. Plaintiff remonstrated with Levine, saying that thereby he had blocked his attempt to raise money. He also got a friend to intercede with Levine's attorney. Finally, after these fruitless efforts, on March twenty-third, plaintiff, advised by an attorney, executed to Levine's wife a bond and mortgage for $1,500 (to be a third lien on the premises), a general release and estoppel certificate, and paid $200 cash, to procure a satisfaction of this alleged lien of Levine, and Levine's general release.

On May 18, 1918, this suit for rescission and cancellation was begun. Before it had been reached for trial, plaintiff, on October 3, 1918, remitted the half year's interest on this mortgage, stating that such payment was made under protest, pending the determination of the present suit.

The learned trial court found that when Levine's lien was filed, plaintiff only owed him $112; and that, other than for such sum, neither of the defendants had any just claim against plaintiff; that said notice of lien was filed in bad faith and to extort money. The court's finding negatived any basis to claim compensation for superintendence. He also found that defendant's lien had been filed more than six months after completion of the work, and, therefore, was invalid under

the statute. (See Lien Law, § 10, as amd. by Laws of [1916, chap. 507.)

These findings of the judge who saw the parties are confirmed by the testimony. As support for this decree of rescission and cancellation, we have an unjustifiable and outlawed mechanic's lien put forward just at the critical moment when plaintiff's necessities could only be met by a second mortgage. After efforts by direct appeal, then through intervention of friends, and by an attorney to induce Levine to withdraw his demands, plaintiff paid the cash and gave this third mortgage, with an interchange of releases, and the estoppel affidavit.

The learned court's opinion says: " *Protesting* that he did not owe the defendant more than $112, plaintiff, in order to get his loan on mortgage and to pay his other indebtedness and so avoid a sale of his property, paid the defendant in cash $200, and executed a bond and mortgage for $1,500." (105 Misc. Rep. 670.) There was no formal protest, and no reservation at this final closing. The written protest with the *interest* payment was after this cause was at issue.

Although this suit is based upon duress, it is not merely a case where one was constrained to take hard terms. The facts illustrate that " Duress is a species of fraud in which compulsion, in some form, takes the place of deception in accomplishing the injury." (Cooley Torts [3d ed.], 966.) Because the coercion involving such elements took the form of a compromise, it is not beyond equitable relief. (8 Cyc. 523.) It would be a reproach to the Court of Chancery if such a scheme should succeed on the ground that plaintiff, thus circumstanced, " intended to give up his right " because he took no formal reservation at the final closing. The instruments lacked legal consent. Even in the absence of protest, or express reservation, such fruits of fraudulent oppression should not be upheld. ( *Van Dyke* v. *Wood,* 60 App. Div. 208; *Kilpatrick* v. *Germania Life Ins. Co.,* 183 N. Y. 163; *Neilson* v. *M'Donald,* 6 Johns. Ch. 201.)

It must be held that a strike through a bogus lien, as a hold-up, was effective as duress. The owner might bond such lien, but this also would be an impossible requirement to one without resources, threatened with an execution on

another judgment. The presence of an attorney did not save plaintiff from the evil pressure against which he was powerless to stand, except with the immediate prospect of loss of his whole property. " There is no legal standard of resistance with which the person acted upon must comply at the peril of being remediless for a wrong done to him, and no general rule as to the sufficiency of facts to produce duress." (9 R. C. L. 716, tit. " Duress," § 7.)

In one respect, however, there should be a modification. Defendant Jacob Levine should be placed in *statu quo*. Plaintiff should not keep the general release. (Story Eq. Juris. [14th ed.] § 340.)

I advise, therefore, that the judgment be modified by inserting as a condition that plaintiff Kieve Aronoff and Jacob Levine mutually return the general releases exchanged. As thus modified, I advise to affirm, without costs to either party on this appeal.

Present — JENKS, P. J., MILLS, PUTNAM, BLACKMAR and KELLY, JJ.

Judgment modified by inserting as a condition that plaintiff Kieve Aronoff and Jacob Levine mutually return the general releases exchanged, and as so modified unanimously affirmed, without costs to either party on this appeal.