JENNIE FARRUGGIO FRATELLO, Also Known as JENNIE FAROUCHE, by PIETRO FARRUGGIO, Her Guardian ad Litem, Plaintiff, *v.* IGNAZIO FRATELLO, Defendant.

Supreme Court, Oneida Special Term, May, 1922.

**Husband and wife — annulment of marriage — duress — when marriage of young girl brought about by threats will be annulled.**

In an action to annul a marriage on the ground of duress brought under section 1139 of the Civil Practice Act the plaintiff, in order to succeed, must satisfy the court that the duress was occasioned by the other contracting party or that he knowingly used or availed himself of it as a means of procuring the marriage, and it must also appear that the threats of defendant alleged in the complaint constrained the will of the plaintiff and induced her promise.

The evidence clearly establishing that plaintiff at the age of eighteen years and nine months was forced to marry defendant by duress exercised by him; that he uttered or instigated threats of bodily harm to plaintiff and injury to the property of her parents; that at the time of the marriage these threats exercised a controlling influence over the will of plaintiff and compelled her consent; that the marriage was never consummated; that at the time of the marriage ceremony defendant, who was then twenty-nine years of age, knew or had reason to believe that plaintiff, who had no affection for him, was impelled to marry him by fear, plaintiff will be granted judgment for the annulment of the marriage.

ACTION to annul a marriage.

*Salvador J. Capecelatro*, for plaintiff.

*Nicholas G. Powers*, for defendant.

MARTIN, LOUIS M., J. This action is brought to annul the marriage contract entered into by and between the plaintiff and defendant, under section 1139 of the Civil Practice Act, which provides as follows: " An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by

force, *duress* or fraud may be maintained at any time by the party whose consent was obtained."

The plaintiff alleges that her consent to the marriage was brought about by " duress," and that, therefore, the contract is void, and should be annulled. This the defendant denies, and the issue thus raised is to be determined.

" Duress " is defined by the law writers as follows: " An actual or threatened violence, or restraint of a man's person, contrary to law, to compel him to enter into a contract, or to discharge one." 14 Cyc. 1123.

In order to succeed in this action plaintiff must satisfy the court " that the duress of the party asking to be relieved was occasioned by the other contracting party, or that he knowingly used or availed himself of such duress as a means of procuring the contract sought to be annulled." *Sherman* v. *Sherman*, 20 N. Y. Supp. 414. It must also appear that the threats " constrained the will of the promisor and induced the promise." *Dunham* v. *Griswold*, 100 N. Y. 224. These threats could be made by defendant personally or by another person or persons associated with him, providing the defendant knowingly used or availed himself of them in procuring the contract.

The question then presents itself: Was this plaintiff impelled to enter into this contract by the threats of defendant, or those associated with him? And was this marriage ceremony between plaintiff and defendant performed while the plaintiff was under the fear induced by such threats?

This plaintiff and defendant were married July 23, 1921, at Frankfort, Herkimer county, N. Y., by a justice of the peace. Plaintiff and defendant have never since said marriage cohabited together as husband and wife, and no religious ceremony was ever performed in relation to this marriage contract. At the time of the marriage plaintiff was an infant of the age of eighteen years and nine months and resided with her father, mother and two brothers in the said village of Frankfort. The two brothers were attending the high school in said village, and plaintiff was working with her father and mother in a mill. Defendant was twenty-nine years of age and resided in the city of New York. His advent in Frankfort was occasioned by a visit to his uncle, who resided there. This visit occurred in April, 1921; and on or about the twenty-fourth day of said month he passed plaintiff on the street and became attracted by her appearance, and, together with his uncle, sought out the mother of plaintiff and suggested a marriage agreement between himself and plaintiff, which, after several interviews, was agreed to by the mother, and finally by the father of plaintiff, and

she was called into the room and told that she was to marry this defendant.

In no way was plaintiff consulted or allowed to exercise any choice, but was practically bargained for as if she were simply a piece of personal property to be disposed of according to the agreement entered into. Plaintiff's attitude plainly indicated that she was opposed to this agreement, that she had no affection for defendant, and that she desired to continue in her work with her parents and care for herself.

After this contract was made defendant and his uncle were at the home of plaintiff's father and mother almost nightly, and were urgent for an immediate marriage. A short time before this marriage they all assembled at the house for a celebration, and the acts of defendant towards plaintiff were such as to lead the parents to notify defendant that the contract was at an end, and to refuse to carry it into effect. This cancellation of the agreement culminated in defendant and his uncle coming again to the home, and in the presence of plaintiff's father, mother and brothers and of this plaintiff, she was told by both the defendant and his uncle that if she, plaintiff, did not marry defendant, they would kidnap her, take her to New York, disfigure her face by cutting it, and would also destroy the house of plaintiff's father by blowing it to pieces; and gave them all one week to consent to such marriage. These parties came again to the said house on the night of July twenty-second, and demanded a reply, and plaintiff's father and mother consented that the wedding take place the next day.

The attitude of this family on the witness stand, their statements in court and the appearance of the witnesses on both sides would lead any impartial observer to the conclusion that these people not only believed that these men would carry into execution this threat, but that they were justified in such belief.

On the afternoon of the day of the wedding defendant and his uncle came again to this plaintiff's home and she accompanied them to the town clerk's office where the defendant and his uncle procured a marriage license, and afterwards plaintiff, her father and mother, defendant and his uncle went before a justice of the peace and the ceremony was performed. After this ceremony, plaintiff's father insisted on a church service. The marriage was never consummated by cohabitation; and plaintiff was taken to friends at Utica, N. Y., and kept concealed from defendant, and this action commenced.

The evidence of plaintiff was to the effect that she feared for her safety, and believed that defendant and his uncle would carry out their threats and that she finally agreed to marry defendant to save

her father's house from destruction and herself from injury; that she spent the night before the wedding crying and in fear. The evidence of the two brothers, aged, respectively, fourteen and sixteen years, was that the father and mother and all consented to this marriage through fear of these men.

Defendant knew of this situation during all of this time; knew that plaintiff was in a state of fear; knew that she repudiated the marriage, and that she had no love for him; and, when asked by the court if he desired to marry the girl, knowing that she did not wish to do so, flippantly remarked: " that he did not care, it was up to the judge."

I cannot sustain this contract under these conditions. The action of the parents in forcing this girl into the agreement, in the first instance, cannot be too strongly condemned. This practice is steadily growing in this state, and was brought to the attention of the legislature in the session of 1921. People of foreign birth who engage in this practice must learn that girls are not chattels to be bought and sold in marriage without their free consent; and, while in itself it would not be sufficient ground to annul this contract, slight evidence in addition should be sufficient in any case, where no further consummation of the marriage takes place; and future and drastic action should be taken to remedy this evil. It simply results in future action in the divorce court and is a breeder of unhappiness and crime.

Under the evidence in this case, there can be but one conclusion, viz., that this plaintiff was forced into this marriage contract by duress; that this duress was occasioned by the defendant; that he uttered or instigated the threats of bodily harm to plaintiff and injury to property of the father and mother of plaintiff, and was cognizant of them when made, and that at the time of the marriage these threats exercised a controlling influence over the will and conduct of this plaintiff and compelled her consent thereto; and that at the time of the marriage ceremony defendant knew, or had reason to believe, that plaintiff was impelled to marry him by fear that the threats so made would be carried into execution.

The marriage contract entered into between plaintiff and defendant on the 23d day of July, 1921, is, therefore, annulled, and findings may be prepared and judgment entered accordingly, with costs.

Judgment accordingly.