# American Railway Express Company, et al. v. Hicks, et al.

(Decided March 9, 1923.)

## Appeal from Daviess Circuit Court.

1. Action—Recovery of Money Obtained by Same Duress from Two Persons is Single Cause of Action.—Where a sum of money was obtained from a father and son, each contributing a portion, by the same duress, consisting of threat of imprisonment of the son, a petition to recover the entire sum did not state two causes of action, but one cause in which two persons were interested, within Civil Code of Practice, section 22.

2. Pleading—Ruling on Motion to Make More Specific not Erroneous Because Evidence did not Thereafter Support Allegations of Petition.—Where a petition stated a cause of action to recover money paid by the two plaintiffs to the defendants under duress, and alleged that both plaintiffs were put in duress, and by reason thereof were coerced into paying the money, it was not error to overrule a motion to require the petition specifically to state how much of the total sum each of the plaintiffs contributed, even though the proof showed that the entire sum was contributed by one of them, since the motion was to be determined on the allegations of the petition, and the remedy for failure of proof was by denial of recovery to the plaintiff, who made no contribution.

3. Payment—Answer Alleging Plaintiff was Personally Liable for Money he was Required to Pay Held Insufficient.—In an action to recover money paid to defendants under duress of threatened prosecution, an answer alleging that one of the plaintiffs was personally liable under his contract of employment with defendant for the amount which he was required to pay because an express package was lost through his negligence constituted no defense to the cause of action alleged in the petition.

4. Railroads—Contract Between Director General and Express Companies Held not to Make Him Employer of Their Employes.— A contract between the Director General and an express company by which the latter agreed to handle the express business for the railroads under federal control, assumed liability for all claims on account of loss of or damage to its own property, or the property of others, resulting from its operation of the express lines, and agreed it would make no defense to any such action on the ground it was a federal agency, did not make the employes of the express company employes of the Director General so as to impose on the Director General instead of the company liability for duress by one of the employes.

5. Railroads—Proclamation of President Taking Control of Express Companies Held not to Make Director General Employer of Express Employes.—The proclamation of the President November

16, 1918, assuming control of an express company, directing operation of the express transportation system through the Director General of Railroads, who might perform the duties thereby imposed upon him through the officials of the company under the existing contract, and providing that, except so far as the Director General should otherwise provide, the officials and employes of the company should continue the express business in the usual and ordinary course under that contract, did not make the employes of the express company employes of the Director General so as to relieve the company of liability for duress exerted by them.

6. Appeal and Error—Permitting Amendment Setting up Issue not Submitted to Jury Harmless.—Where the original petition sought recovery on the ground of duress, it was not prejudicial to defendant to permit the filing of an amended petition to seek recovery on the ground of mistake of law, which there was no evidence to support, where the issue which the amended petition sought to raise was not submitted to the jury.

7. Payment—Threats Against Child Communicated to Father are Admissible Evidence of Duress on the Father.—There is an exception to the general rule that one cannot avail himself of duress imposed on a third person where threats are made to a child and money thereby obtained from a parent, and therefore it is competent in an action by the father to recover money paid under duress to prove threats made to the son and communicated to the father.

8. Trial—Instructions Allowing Recovery for Fraud and Duress Held Erroneous Where Only Duress was in Issue.—Where the petition charged duress as inducing payment of money, and nowhere alleged that any fraud was practiced, and there was no evidence from which fraud could be inferred, instructions permitting recovery if the money was obtained either by fraud or duress were erroneous and required reversal of the judgment.

9. Payment—Threats of Prosecution to Enforce Payment of Just Claim is Duress.—Threats of prosecution for an offense of which the party is actually guilty, if they induce the threatened party to pay money that he would not have voluntarily paid, amount to duress for which a recovery can be had.

SANDIDGE & SANDIDGE for appellants.

T. F. BIRKHEAD and BIRKHEAD & WILSON for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

E. B. and H. B. Hicks filed this action in the Daviess circuit court to recover $824.55 alleged to have been paid to the American Railway Express Company and J. K. Shannon while under duress. After several pre-

liminary motions filed by defendants had been overruled, they filed answer denying the duress alleged and interposing the affirmative defenses: First, that the money was not paid to them but to Walker D. Hines, Director General of Railroads, in control of and operating the American Railway Express Company; and, second, that the payment was made in satisfaction of a liability due under the employment of H. B. Hicks by the Director General. A trial was had and judgment was rendered in favor of plaintiffs for the amount claimed. The defendants have prosecuted this appeal.

H. B. Hicks, one of the appellees, was employed as platform man, at Owensboro, Kentucky, as appellants claim by the Director General of Railroads but as appellees claim by the American Railway Express Company. On the evening of January 6, 1920, he received some valuable packages from a train arriving at Owensboro and receipted therefor to the train expressman. According to his testimony, he placed the packages in a desk drawer in the office of the express company and continued about his business. Lon Gough, who ordinarily received the valuables from that train, was detained at his home that evening on account of the illness of a member of his family. He came to the depot shortly after the train had gone and was notified by Hicks that the packages had been placed in the desk drawer. Hicks had previously resigned his employment, effective as of that date, and the following morning he began work at another place. About three o'clock that afternoon Gough discovered that the packages containing money had been lost. He at once crossed the street to the place where Hicks was working and asked him where the packages were. Hicks replied that he had left them in the desk drawer, and came back to the office with Gough, but they were unable to find the packages. Hicks denied any knowledge of their whereabouts. J. K. Shannon, superintendent of the express company, and J. P. McKeown, a special agent, came to Owensboro the following day to investigate the loss. They interviewed Hicks and his father several times, telling them that H. B. Hicks was responsible for the money and that they had interviewed the district attorney, who had advised them to issue a warrant, and intimating that if the money was not produced at a given hour the next day they would cause Hicks to be arrested. E. B. Hicks, the father of H. B. Hicks, raised the requisite amount of money and

delivered it to J. K. Shannon, who gave him a receipt for it signed "American Railway Express Company by J. K. Shannon, Superintendent." The receipt purports to show that E. B. and H. B. Hicks felt it their personal duty to reimburse the express company for the loss resulting from negligence, and therefore paid the money in full satisfaction of that company's claim against E. B. Hicks.

The denial of appellants' motion to require appellees to elect as between the two causes of action set up in their petition as amended, and the overruling of the motion to make the petition more specific, are the first errors assigned. Both of these contentions rest on the ground that the petition does not allege that appellees jointly owned the $824.55, and it is argued that if they were not joint owners of the money and each of them contributed a part of it, then each had a separate cause of action for the amount contributed by him. The petition alleges that they paid the $824.55 under duress. The cause of action was for wrongful coercion resulting in their paying the money. There were not two causes of action, but one in which two persons were interested; and under section 22 of the Civil Code the two were properly joined as plaintiffs.

Neither was it error to overrule the motion to require appellees to make their petition more specific and to state how much each of them contributed to the sum total. It is undoubtedly true that if the money was wholly paid by one of them the other was not a proper party plaintiff. But the petition alleges that both of them were put in duress and by reason thereof were coerced into paying the money. It is said, however, that the proof shows that E. B. Hicks paid the entire amount, and that fact demonstrates the impropriety of the court's ruling on this motion. It may be conceded that it was improper to allow any recovery on behalf of H. B. Hicks, but it does not follow that the motion to make the petition more specific should have been sustained. That motion was determinable on the averments of the petition and not in the light of subsequent developments. The petition, as we have seen, stated a joint cause of action. Hence it was not error to overrule the motion.

It is earnestly insisted that reversible error was committed in sustaining demurrers to the amended answers, which set up the two affirmative defenses here-

inbefore referred to.  One of those defenses was that H. B. Hicks was personally liable for the loss of the packages, the liability emanating, as claimed by appellants, from his contract of employment, by which he obligated himself to pay the losses the American Railway Express Company sustained through his failure to perform his duties.  It is argued that it was his duty to take a receipt for the packages from Gough, and, having failed to do so, he is liable for the loss of them and cannot recover, even though the money was paid under duress.  It seems to be conceded that he was only required, under the terms of his employment, to exercise that degree of care that an ordinarily prudent person would use under like circumstances.  Accepting that as the measure of his responsibility, it follows by no means that a proven case of negligence would defeat a recovery in this action.  Indeed, in our opinion the extent of its availability was its effect on the contention that the payment was voluntarily made in settlement of a recognized liability —an issue otherwise made.  Certainly it was no defense to the cause of action asserted in the petition.

The next question involves a consideration of the primary liability of appellants for the wrongful acts alleged in the petition.  The amended answers aver in substance that both Hicks and Shannon were employees of the Director General of Railroads, who, at the time complained of, was in control of and directing the operations of the American Railway Express Company. A copy of the agreement of June 21, 1918, between the Director General of Railroads and the four major express companies of the United States was filed by appellants. Under that agreement the express companies caused to be organized a corporation known as the American Railway Express Company. On June 26, 1918, a contract was made between the Director General and the American Railway Express Company, by which the former employed the express company to conduct the express transportation of the country upon all lines of railroads under federal control.  One of the provisions of that contract made the express company, as between it and the Director General, liable for any and all claims on account of loss of or damage to the property of others in charge of the express company; and the company further agreed to indemnify and protect the Director General against all claims, demands, suits and actions that might be filed or instituted on account of any claim arising out of the

undertakings of the contract. Another provision was that the express company would not, except with the approval of the Director General, in any action at law or in equity make the defense that it was an instrumentality or agent of the federal government. On November 16, 1918, the President, by virtue of congressional authority, assumed control of the American Railway Express Company and all of its appurtenances and property of every kind, and directed that possession, control and operation of the system should be exercised through the Director General of Railroads; and further, that the Director General might perform the duties imposed upon him, so long and to such extent as he should determine, through the board of directors, officials and employes of the express company, under the contract of June 26, 1918, and except so far as the Director General should from time to time, by general or special orders, otherwise provide, the board of directors, officials and employes of that company should continue the express business in the usual and ordinary course under that contract.

It is insisted that by the contracts referred to, and especially by virtue of the proclamation of November 16, 1918, the express company ceased to operate its properties, that its employes became employes of the federal government, and, under Mitchell, By, &c. v. Cumberland Telephone & Telegraph Co., 188 Ky. 263, Commonwealth v. L. & N. R. R. Co., 189 Ky. 309, and Payne, Agent v. Ramsey, 195 Ky. 117, the cause of action, if any appellees had, was against the federal government and not the express company. The provisions of the contract between the Director General and the express company that have been referred to seem to us to refute the contention. The express company by the terms of that contract assumed liability for all claims on account of loss of or damage to its property or the property of others resulting from its operation of the express lines of the country, and agreed that it would make no defense before any court that it was an instrumentality or an agency of the federal government without the approval of the Director General. In view of these obligations we feel warranted in holding that the contract did not shift or transfer to the federal government the liability incurred by loss of or damage to property in the possession of the express company. It is also our view that the proclamation of November 16, 1918, did not affect that liability, for, as stated in that proclamation, the Direc-

tor General of Railroads was authorized to perform the duties therein imposed through the board of directors and employes of the express company under the contract of June 26, 1918; and the proclamation further provided that the express company should continue to operate under the contract until the Director General should, by general or special order, otherwise provide. There is nothing in this record to show that the Director General thereafter issued any order modifying or changing the contract. It must therefore be assumed that in January, 1920, the express company was operating under the contract of June 26, 1918. Hence the liability in this case depends on that contract, and, as we have observed, its provisions plainly make the express company liable for any loss to the property of others resulting from its operation of the business. We have been referred to no decision in which a different conclusion was reached; and we may add as a confirmation of this view that in the original answer filed herein it was admitted by appellants that E. B. Hicks and J. K. Shannon were employes of the express company, the contrary position not having been taken until the amended answers were filed. Further confirmation is to be found in the receipt given appellees, which was signed ''American Railway Express Company'' by its superintendent. In view of these considerations we conclude that the authorities relied on, which properly hold that during the period of federal control the railways of the country were not subject to liability for the acts of those operating them, are inapplicable, since the status of the railroads during that period was entirely different from that occupied by the American Railway Express Company. The motion for a peremptory instruction on both of the grounds urged was properly overruled.

As to the contention that the trial court erred in allowing appellees to file the second amended petition, alleging in substance that the $824.55 was paid under a *bona fide* mistake of law and under a mistaken understanding of their legal rights and liabilities, it is sufficient to say that that question was not submitted to the jury in any of the instructions given. The amendment should not have been filed, because there was no evidence to support it, but, as the question which it sought to raise was not submitted to the jury, the error was harmless.

It is insisted that error was committed in refusing to sustain appellants' motion to exclude from the consideration of the jury the testimony of H. B. Hicks with reference to threats made to him which induced his father, E. B. Hicks, to pay the money to the express company. The $824.55 was paid by E. B. Hicks, and on that hypothesis it is argued that the evidence of H. B. Hicks tending to prove duress was incompetent. It is a general rule that one cannot avail himself of duress imposed on a third person. But there are well recognized exceptions to the rule, one of which is that threats made to a child will be regarded as affecting the parent. The relationship between parent and child is so close that the law recognizes that a threat against one will deprive the other of the free exercise of his will and judgment. Hence it is competent, in an action by the father to recover money paid under duress, to prove threats made to his son and communicated to the father, for, as indicated, the law regards such threats as operating upon the mind of the father. 9 R. C. L., page 726. Under this rule it was manifestly proper to overrule the motion to exclude the testimony of H. B. Hicks as to threats made to him and communicated by him to E. B. Hicks. We may add in this connection, however, that the proof in this case shows that the money was paid by E. B. Hicks, and appellants' motion for a peremptory instruction as to H. B. Hicks should have been sustained.

Instructions 1 and 2 are attacked on the ground that they permitted a recovery if the money was obtained either by fraud or duress practiced upon appellees. This objection to the instructions is well taken. The petition charged duress, which induced the payment of the money. It nowhere alleged that any fraud was practiced, and there is no evidence in the record from which the existence of fraud in the negotiations could be inferred. A recovery for duress might be sustained on a state of facts entirely devoid of fraud. Indeed, there might be no evidence whatever tending to show fraud in a most flagrant case of duress. If appellees' evidence be given its broadest significance, there can be no deduction of fraud, and yet the instructions permitted a recovery if the money was so obtained. Because of this error in the instructions the judgment must be reversed.

Instruction number 2 directed the jury to find for defendants if it believed from the evidence that were asserting a claim against the plaintiff, H. B. Hicks, on

account of the loss of the money mentioned in the evidence, resulting from his negligence, and that the $824.55 was paid in satisfaction of the claim or for the purpose of avoiding litigation, "unless they believed from the evidence that same was obtained by defendants under fraud or duress as indicated in instruction No. 1." The criticism of this instruction goes to the words quoted, it being contended that they should have been eliminated from the instruction. The foundation for this contention is that duress does not exist if in equity and good conscience the money should be returned to the one imposing the duress. The argument is that if one believes himself to have been wronged, and if the wrong includes a violation of the criminal law, it is not duress to force the wrongdoer to right the wrong by threatening him with a prosecution. There is authority for the contention. But the weight of authority is that threats of a prosecution for an offense of which the party is actually guilty, if they induce the threatened party to pay money that he would not have voluntarily paid, amount to duress for which a recovery can be had. The reason for the rule seems to be that in such case the threatener has perverted and abused the laws which were made for another purpose, and he is in no position to claim the benefits of a contract obtained in that way. 9 R. C. L. 719-720. The precise question does not seem to have been decided by this court. We are, however, inclined to adopt the rule of more uniform application and to hold that the qualification was not erroneous, except in its employment of the word "fraud," which, as we have seen, was unauthorized by the pleadings and proof.

Instruction number 3 is not subject to the criticism offered by appellants. It substantially conforms to the instruction approved by this court in Commonwealth v. Reffitt, 149 Ky. 300. While its phraseology is somewhat different, in its essential parts it conforms to the instruction in that case and to the definition of duress generally recognized by the courts. What has been said with reference to instruction number 1 precludes the necessity of a discussion of the instructions offered by appellants. Neither of the instructions should have been given, since under the general doctrine referred to neither the existence of a valid claim nor the commission of a felony constitutes a defense to an action for duress.

The final contention that the verdict of the jury is flagrantly against the evidence needs no discussion. It is enough to say that there is sufficient evidence to sustain a verdict for appellee, E. B. Hicks. However, because of the error indicated, the judgment is reversed and the cause remanded for a new trial.