## Utterback et al. v. Farmers' National Bank.

(Decided March 19, 1929.)

ROBERT T. KIMBROUGH for appellants.

J. F. GORDON and WILLIAM J. COX for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

In September, 1927, appellee instituted this action against appellants to recover on a note for $5,000 executed by them to it. The court sustained a demurrer to the answer of appellees A. C. Jones, H. C. McDonald, and L. L. Ware. He overruled the demurrer to the answer of appellees J. D. Utterback and John H. Utterback. The issues were made up, and at the conclusion of the evidence for the defendants the court peremptorily instructed the jury to find for the plaintiff. The defendants appeal. The facts are these:

John W. McDonald, for a number of years prior to November, 1925, had been the cashier of the bank. The appellants were all relatives of his, being his father, father-in-law, brothers or brothers-in-law. About the middle of November, 1925, a national bank examiner investigating the affairs of the bank discovered a shortage in the cash. He called McDonald's attention to this, and, after some examination of the books by him and McDonald together, McDonald signed a written statement, stating that his accounts as cashier were short in the net amount of $14,103.50, and in that statement gave the items constituting this default. The president of the

bank then notified the surety company, who was on McDonald's bond. Its agent came, and the three had a meeting in the director's room. The surety company's agent said to McDonald, ''I will give you thirty days to raise the money.'' The president said, ''We don't wish any prosecution all we want is our money, and we will give him time to get the money.'' McDonald had $5,000 in the bank, he also owned stock in the bank of value $2,000, and it was there agreed that, if he would pay $5,000 more, the bank would accept it in full. Thereupon a note for $5,000 was drawn up, and McDonald took it to the appellees, who signed it. The note was renewed several times, but in March, 1926, McDonald was indicted in the federal court, and he having been convicted the appellees afterwards refused to pay the note or to renew it further, and this suit followed. By their answer J. D. Utterback and John H. Utterback alleged, in substance, that the bank promised McDonald that, if the defendant would execute to the bank their notes for $5,000, neither the bank nor any one connected with it would disclose the shortage, and would compound the crime, suppress the evidence, and prevent the prosecution of McDonald therefor, and that they signed and delivered the note upon this consideration and no other.

On the trial the appellees testified, in substance, that McDonald came out to see them, and said that the president of the bank had promised that there would be nothing done with him if they would sign this note, and that if they would go on the note he would be released. None of the appellees saw the president of the bank before signing the notes. Two of them testify that, after the note had been accepted by the bank, the president said that McDonald would not be bothered about it.

The only evidence as to what took place between the president of the bank and McDonald is the testimony of McDonald. He says that the president wrote out the note and directed him to get appellees to sign it. He asked the president what he could do, and the president said. ''Can you raise this money?'' he said ''I will try.'' Mr. McDonald also says this: ''He never did threaten me with prosecution, but he knew that I was making an effort to raise the money, and he said that would be the end of it.'' In their testimony some of the witnesses say that the president of the bank said, in substance, that he looked upon McDonald almost as one of his sons, and that he would do all that he legally could to prevent his being

bothered; but, taking the testimony as a whole, there is an absolute failure to show that the president of the bank made any promise to cover up the crime or compound it. The well-settled rule on the subject is this:

> "A mere intimation, or even a threat to prosecute, would not, in all cases, avoid a contract made by the defaulter for the purpose of making reparation to the person injured by his misdoing, if there is no agreement not to prosecute. . . .
>
> "The authorities are uniform to the effect that courts ought not to refuse to enforce contracts on doubtful or uncertain grounds, and the burden is on the defendant to show that the enforcement would be in violation of the settled policy of the State, or injurious to the rights of the people." Powell v. Flanary, 109 Ky. 349, 59 S. W. 6, 22 Ky. Law Rep. 908. To the same effect see Higgins v. Sowards, 159 Ky. 783, 169 S. W. 554.

The bank was in no danger of losing anything. The surety company fully protected the bank, and its agent gave McDonald 30 days to raise the money. The president of the bank did not threaten him with prosecution. He did not wish the business of the bank disturbed, as it might be if ugly rumors got out; he advised McDonald to raise the money for his own sake as well as for the good of the bank; and all he said, fairly construed, was that, in his judgment, if this was done, that would be the end of it. The end they both had in mind was the action the surety company would take if the money was not raised in 30 days.

> "To invalidate a contract for illegality, the illegality must be inherent. It is not enough that it is associated, even closely; it must be a part of the contract." 6 R. C. L. p. 699, sec. 104.
>
> "The law does not prevent one whose property has been stolen or whose rights have been interfered with through the commission of a crime to compromise with the wrongdoer, if it is not agreed either expressly or impliedly that the prosecution for the offense shall be suppressed or stayed." 13 C. J. p. 453, sec. 394.

The court therefore concludes that the peremptory instruction was properly given at the conclusion of the

evidence. It is also of the opinion that the demurrer to the answer of the other three defendants was properly sustained for the same general reason. That answer alleged, in substance, that they believed, and had reason to believe, that the note was executed to compound the felony, but it did not aver an express agreement to compound a felony.

Judgment affirmed.