### Bond State Bank et al. v. Vaughn et al.

(Decided December 15, 1931.)

A. T. W. MANNING for appellants.

BEGLEY & MOORE for appellees.

Opinion of the Court by Judge Richardson—Affirming.

It is insisted by appellant that the identical facts involved here were stated by this court in Medlock v. Com., 215 Ky. 498, 285 S. W. 232. The facts there stated by the court have not been shown by the evidence in this case. We have not been furnished with any evidence antedating the execution and delivery of the note and mortgage now involved, except as it has been given to us by the testimony of the appellee, including a portion

of his original account with the Bond State Bank, which he filed.

In 1925 the Bond State Bank was placed in the hands of a special deputy banking commissioner for the liquidation of its affairs on account of its insolvency. It appeared at the time from the books of the bank that the appellee had overdrawn his account in the amount of $1,983.17. The deputy banking commissioner, in the presence of N. U. Bond, in the office of the bank, informed the appellee of the amount of his overdraft as it appeared on the books of the bank, and demanded of him to take care of it by the execution and delivery to the bank, a note for $1,983.17, secured by a mortgage on his home. N. U. Bond was at the time an official and stockholder of the bank. The deputy commissioner stated the transaction in this language: "I told him he would have to pay the amount or fix it up, and that if he refused or failed to do so, I would be forced to proceed against him and put the matter before the grand jury of Jackson county." At the time this conversation occurred, the cashier of the Bond State Bank had been arrested and was confined in jail at McKee, Ky., charged with crime growing out of the failure of the bank.

The appellee stated his version of the transaction substantially as follows: The banking commissioner in the presence of N. U. Bond claimed that he, the appellee, knew he had overdrawn his account; that the cashier of the bank had "made oath" that he had given the money to him, and that he was in the same shape as Drake (the cashier); that, if he would execute the note and mortgage, they would discharge him and not bother him; that it was a penitentiary offense; and that he could not get out of it; but that, if he would execute the note and mortgage, they would leave him alone. The appellee was at the time inexperienced and without education. The appellee protested, and claimed that he had not overdrawn his account, and that he did not owe the bank a penny. At that time the appellee was a bona fide housekeeper with a family owning and residing on sixty acres of land in Pike county. It was all the land he owned at the time. It was of less value than $1,000, and, as against the alleged claim of the bank, he was entitled to it as a homestead. Shortly after his conversation with the deputy banking commissioner, the appellee executed and delivered the note and mortgage now involved to the

bank. On May 25, 1925, he filed this action to annul them on the grounds that they were without consideration and were procured by both a false representation and duress. The trial court sustained his charges, and set aside the mortgage and note, but rendered judgment against him on his account with the bank in the sum of $826.32, with interest from January 4, 1927. The Bond State Bank appeals.

The appellant here insists that there was a total failure of proof, and that judgment should have been rendered against the appellee for the amount of the note, the mortgage enforced, and the property sold to pay its debt.

One sheet of the original account of the appellee with the bank is before us without explanation from any official of the bank. It was found by the trial court to be untrustworthy and insufficient upon which to base a judgment for the $1,943.17. On it there appear certain items with which the appellee is charged, aggregating $1,156.85, including entry charges designated as "false credits." The bank offered no explanation as to why these items were so entered and so designated. No evidence as to their integrity was offered. They are unusual, and not according to regular banking, and of themselves are inexplicable. Having been designated on the books of the bank as "false credits," without further explanation, the trial court treated them as such, and it is our opinion it properly did so.

The term "duress," as it is used by the law, means such violence or threats made by the party or some person acting for or through him, or by his advice or counsel, as are calculated to produce on a person of ordinary intelligence a just fear of great injury to person. Com. v. Refitt, 149 Ky. 300, 148 S. W. 48, 42 L. R. A. (N. S.) 329; American Railway Express Co. v. Hicks, 198 Ky. 549, 249 S. W. 342; Greenwell v. Negley, 101 S. W. 961, 31 Ky. Law Rep. 144; Fears v. United Loan & Deposit Bank, 172 Ky. 255, 189 S. W. 226; Utterback v. Farmers' National Bank, 228 Ky. 827, 16 S. W. (2d) 453; Collins v. Isaacs, 231 Ky. 377, 21 S. W. (2d) 474; Williams v. Rutherfurd Realty Co., 159 App. Div. 171, 144 N. Y. S. 357; Aronoff et al. v. Levine, 190 App. Div. 172, 179 N. Y. S. 247; Fratello v. Fratello, 118 Misc. Rep. 584, 193 N. Y. S. 865; Coon v. Metzler, 161 Wis. 328, 154 N. W. 377, 378, L. R. A. 1916B, 667.

In Fratello v. Fratello, supra, duress is defined as follows:

> "Duress is an actual or threatened violation or restraint on a man's person, contrary to law, to compel him to enter into a contract or to discharge one."

The facts in this case plainly bring it within the definition of the term "duress" and also within the reach of false representation, either of which entitled appellee to a cancellation of the note and mortgage.

The appellee and the deputy banking commissioner, in the presence of N. U. Bond, an officer and a stockholder of the bank, were not dealing with each other at arm's length. The deputy banking commissioner in a sense represented the authority of the state banking department, and N. U. Bond, the power of the Bond State Bank, when dealing with the appellee in the transaction. They were apparently in a position to dictate to him. The statement of the deputy banking commissioner was calculated to carry a conviction to his mind, of the effect of their authority as well as a presumtion of a correct knowledge of the law applicable to the affairs of the bank including overdrafts. At that time appellee had committed no public offense, even if he had overdrawn his account with the bank. To overdraw one's account in a state bank, from time to time, with the acquiescence of its officials, was, and is, a violation of no law, either statutory or common law.

The official position and authority of the deputy banking commissioner and N. U. Bond as bank director were calculated to convince the mind of an uneducated person like the appellee that they knew the law and the facts, and that he (the appellee) by merely overdrawing his account had committed a crime, the punishment for which was confinement in the penitentiary, when, as a matter of fact, the statement that he had committed a crime by overdrawing his account was false. It is apparent that he and Bond at the time knew his statement in this respect was false and untrue. The appellee was justified in believing the banking commissioner and Bond were in a position to dictate and control a prosecution concerning the affairs of the bank, and that they possessed authority to do so, as it was asserted by the deputy banking commissioner, and that he had no means or way of escaping the exercise of their controlling

authority other than by the execution and delivery of the note and mortgage. Williams v. Rutherfurd Realty Co., supra.

In Coon v. Metzler, supra, it is said:

" 'Duress' is a relative, rather than a positive, term. Much depends on the situation of the parties, their relations to each other, physical and mental strength, and all the surrounding circumstances. Acts which might fall far short of duress under certain conditions might be ample under other conditions. The threat of an enraged boy to commence a criminal prosecution might be unworthy of notice; the same threat by a man of experience in the world might well cause anxiety; while the same threat by the state's official prosecutor could hardly fail to cause deep solicitude, if not actual terror. It is apparent also that a threat which would have no serious effect on a strong, experienced business man would be terrifying in the extreme to a nervous or weak person with little or no experience in the world. There are no arbitrary and unbending rules which can be applied in every case to determine the question. True, the person claiming duress must be so strongly influenced that his acts are not the result of his own will, but the threats which would accomplish that result in one case might be entirely insufficient in another.''

In this case it is very easy to understand how readily a man with the limited experience and as unlearned as the evidence shows the appellee to be would be convinced beyond a reasonable doubt that men of the authority, position, and power of a deputy banking commissioner and an officer and a large stockholder of a bank were able to send him to the penitentiary, whether he was guilty or not, and that he might escape conviction only by the execution and delivery of the note and mortgage on his farm.

The sixty acres of land was his homestead, worth less than $1,000, and therefore exempt from the debt of the bank. It is apparent that, without the assertion and use of some kind of potent and extraordinary coercion, the appellee would not have mortgaged his homestead for the payment of a debt he disputed and to the payment of which it was not subject.

530

The proven facts fully authorize the conclusion that the execution of the note and mortgage was obtained from the appellee, not only by duress, but by a false and fraudulent statement of the deputy banking commissioner. His statement was made for the use and benefit of the bank, and in the presence of one of its directors and its largest stockholder. The bank is bound by his statement, and is not entitled to repudiate his authority to represent it in the transaction, and thereby collect its note and enforce its mortgage.

Wherefore the judgment is affirmed.