## Gorsuch, Appellant, v. Berman et ux.

*Vendor and vendee—Specific performance—Equity—Agreement of sale executed by brokers.*

A writing under seal appointing brokers sole and exclusive agents for sale of real estate, does not authorize such agents to execute an agreement for the sale of the real estate; and especially is this the case, where the agency agreement provided that the price and terms were to be subject to the approval of the owner, and the evidence indicated that all parties contemplated the owner's written approval by endorsement on the contract of sale.

Argued February 7, 1921. Appeal, No. 135, Jan. T., 1921, by plaintiff, from decree of C. P. Delaware Co., March T., 1919, No. 104, dismissing bill in equity, in

case of Charles W. Gorsuch v. Frank Berman et ux. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for specific performance. Before JOHNSON, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was above decree, quoting it.

*Albert Dutton MacDade,* for appellant.—The contract was valid: Baum v. Dubois, 43 Pa. 260; Affrime v. Mandel, 267 Pa. 387; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; Twitchell v. Phila., 33 Pa. 212; McDowell v. Simpson, 3 Watts 129; Parrish v. Koons, 1 Parsons 79.

*W. Roger Fronefield,* with him *Wm. S. Sykes* and *Charles S. Wesley,* for appellees.—A special power to enter into a written contract to bind the owner to a sale must be clearly given the broker by the terms of his written contract: Twitchell v. Phila., 33 Pa. 212; Trau v. Sloan, 213 Pa. 540; Singer Mfg. Co. v. Christian, 211 Pa. 534; Stokes v. Dewees, 24 Pa. Superior Ct. 471; Paul v. Grimm, 165 Pa. 139; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; Union Trust Co. v. Means, 201 Pa. 374; Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396.

OPINION BY MR. JUSTICE FRAZER, March 7, 1921:

Plaintiff appealed from a decree dismissing his bill to compel specific performance of a contract for the sale of real estate.

Defendant was the owner of property known as 611 Edgemont Avenue, in the city of Chester, which he placed in the hands of Sweeney & Clyde, real estate brokers, for sale, under the following written agreement

dated December 3, 1918: "The undersigned hereby authorizes Sweeney & Clyde as the sole and exclusive agents for the sale of property as described on the other side and agree to pay to said agents when a sale or exchange is effected a commission of two per cent of the gross consideration. The owner reserves the right to withdraw the property from said agents at any time after three months by giving a thirty (30) day notice in writing. But it is understood that this agreement is revocable only in writing and is not revocable while any negotiations are pending for sale or exchange of the property. And if the property is sold or exchanged subsequently to any party with whom the said agents have been negotiating, the commission will be paid to said agents." The agreement further set forth "price and terms subject to the approval of Frank Berman." Pursuant to the above authority the agents on February 7, 1919, executed with plaintiff a written agreement signed by plaintiff and themselves as "agents for Frank Berman," wherein they contracted to sell to plaintiff the premises in question for the sum of $32,500; $1,000 to be paid on signing of the agreement, $13,500 on delivery of deed and the balance, $18,000, to be secured by purchase money mortgage on the property. A check for $1,000 was delivered to the agents who presented the contract to defendant and requested his approval of their action. Defendant stated: "That is all right, but I won't sign it just now; I want to first talk to my wife," who at the time was visiting in New York City, and promised to communicate with her and see the agents the following day. Nothing further occurred until a week later when Frank G. Sweeney, one of the agents, met defendant on the street at Chester and, in answer to a question in regard to the sale, was informed by the latter "he would be in the latter part of the week." Defendant failed to communicate further with either the agents or their principal and, on February 17th sold the property to another person for $35,000.

The authority given the broker, though in writing and under seal, is entirely lacking in power to sign an agreement of sale on behalf of defendant. In effect the authorization is merely an exclusive agency to secure a purchaser able and willing to purchase the property. The power of the agents was limited by the written instructions and their authority will be strictly construed and not extended without the consent of the principal: Union Trust Co. v. Means, 201 Pa. 374; Smith v. McCann, 205 Pa. 57. They were without power to bind their principal by a contract in his name: Trau v. Sloan, 213 Pa. 540. This construction of the written authorization is supported by the act of the parties themselves by inserting in the contract a provision requiring the price and terms to be subject to the approval of the owner. The evidence as to what was said and done by the latter on submitting the written agreement to him falls short of establishing an approval of the sale on his part. In fact, it rather indicates the contrary, as the agent endorsed on the agreement, for the signature of the owner, "I authorize and approve this agreement." This confirmatory endorsement was not signed by defendant. Apparently all parties contemplated the owner's written approval of the sale by endorsement on the contract itself, since, when asked to sign, he stated "that is all right, but I won't sign it just now." His signature, in fact, was not obtained and the contract remained executory and is insufficient to form the basis of a decree for specific performance.

The decree is affirmed at the costs of appellant.