Fiegelman, Appellant, *v.* Parmoff Corporation.

Argued April 30, 1969.  Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*David Epstein,* with him *Irving Epstein,* for appellant.

*Robert P. Browning,* with him *Oliver, Price & Rhodes,* for appellee.

OPINION BY MR. JUSTICE POMEROY, October 9, 1969:

This is an appeal from a final decree in equity, denying appellant Fiegelman's prayer for specific performance of an option agreement for the sale of land. At issue is the legal effect of the option agreement and the authority of one Alexander N. Tate, a licensed real estate broker, to enter into the agreement on behalf of the appellee, Parmoff Corporation (Parmoff), the owner of the land.

The option agreement in question was negotiated between Tate and Fiegelman and executed on December 15, 1961. The agreement was signed "Parmoff Corporation, Alexander N. Tate, Seller; David Fiegelman, Buyer." The agreement contemplated the sale of some 70 acres situated in the City of Scranton. The stipulated purchase price was roughly $7,000 and a $300 deposit was paid by Fiegelman to Tate and retained by Tate in a special account, as was his custom with down payments on sales agreements. No time for settlement was specified, but the agreement provided that the seller would convey the premises "if and when available". The word "available" is not defined in the agreement, nor is there any limitation on appellee's discretion as to when it would convey. At the time of the option agreement Parmoff contemplated conducting strip mine operations on the land, and appellant testified without contradiction that the availability clause of the option agreement spoke to the termination of such mining operations. At the time of the suit mining operations which had been conducted on the property had ceased.

In August, 1966, having failed to secure settlement under the option agreement, appellant brought an action in equity, seeking specific performance of the option agreement by conveyance of the premises to him and a temporary injunction preventing appellee from conveying or encumbering the property to any other party. Appellee's amended answer raised the defense of the Statute of Frauds and asked affirmative relief in the form of cancellation of the option agreement.

The chancellor in his adjudication found that an option to purchase land fell within the Statute of Frauds and that Tate had no written authority to bind the Parmoff Corporation. Accordingly, he found the option agreement void and of no effect; in his decree *nisi* the chancellor ordered that the agreement be cancelled and that the cancellation be noted on the margin of the record of the option in the office of the Recorder of Deeds. Exceptions to the decree were taken by Fiegelman and dismissed by the court en banc, which ordered that the decree *nisi* be entered as a final decree.

The Statute of Frauds clearly requires that an agent's authority to make or create an uncertain interest in land be manifested in writing.[1] Act of March 21, 1772, 1 Sm. L. 389, Sec. 1, 33 P.S. §1. See also *Stevenson v. Titus*, 332 Pa. 100, 2 A. 2d 853 (1938), and *Lehner v. Montgomery*, 180 Pa. Superior Ct. 493, 119 A. 2d 626 (1956). Appellant contends that the Statute has, in fact, been complied with, or, alterna-

---

[1] The Statute provides in pertinent part: ". . . [A]ny uncertain interest in lands, made or created by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect."

tively, that the agent's authority was later ratified in writing. We do not agree.

Appellant's first argument is that the requirement of the Statute is satisfied by a memorandum of agreement entered into on January 19, 1954, between one Robert Y. Moffat[2] and Tate, when that agreement is considered in the light of their subsequent conduct. Under the terms of the 1954 agreement, Tate agreed to serve as a real estate broker for Moffat, providing buyers or lessees for Moffat's various properties in return for a stipulated commission. Paragraph 5 of that agreement reads as follows: "Tate shall at all times act as a real estate broker and as an independent contractor in his own business of buying and selling real estate for others. Tate is not an employee of Moffat and has no authority to act for or to represent Moffat as an employee or agent, but only as a broker under this agreement." It is manifest that this provision, far from authorizing Tate to act as Moffat's agent, specifically negates Tate's status as agent.

Appellant argues, however, that the term "broker" is ambiguous and that the subsequent conduct of the parties must be examined to clarify the nature of Tate's capacity.

In the face of the precise statement that "Tate . . . has no authority to act for or to represent Moffat as . . . agent", we cannot find the agreement of 1954 either ambiguous or in need of interpretation. "Usage is not effective to contradict the specific terms of an authorization." *Restatement (Second), Agency,* §36,

---

[2] In 1954 Moffat had large landholdings in the Scranton area. Subsequently, he transferred his land interests to Parmoff, of which he was president and majority stockholder until April 1, 1966. Thereafter, he liquidated his interest in Parmoff and is not involved in this suit. It is not questioned by Parmoff that if Tate was authorized to serve as Moffat's agent, he thereby possessed equal authority to act on behalf of Parmoff.

comment *b* (1958). Where, as here, a writing unambiguously provides that a real estate broker shall not act as an agent, we hold that usage or the conduct of the parties under the writing may not serve to amend that writing or transform its plain meaning. Without such amendment, the memorandum of 1954 clearly gives Tate no authority to execute the option agreement in question, and can in no sense be deemed to satisfy the Statute's requirement.

Appellant's second argument is that Parmoff has ratified the option contract and/or admitted its validity. This argument rests on an interpretation of still another agreement, one dated July 1, 1965, between Tate and Parmoff and of a subsequent letter sent by Moffat to Tate. At the time of these writings, Moffat was contemplating the sale of his interest in Parmoff, and the corporation, anticipating this change, was anxious to clarify its relationship with Tate. The result was the agreement of July 1 specifying the properties of Parmoff which were subject to agreements of sale negotiated by Tate. The pertinent provisions of that agreement are as follows: "4. There has been given to Tate the right and privilege of contracting for the sale of certain properties, a list of which is hereto attached and marked EXHIBIT 'A' . . . . 5. Except as set forth in paragraph 4 hereof, there are no existing transactions pending between the parties and no commitment, options, sales, leases or authority to effectuate the same are extant between the parties . . ." The property in question was not listed in "Exhibit A", the schedule attached to that agreement. This agreement therefore is no more a ratification of the transaction entered into by the alleged agent than the 1954 agreement was the creation of an agency.

Tate testified, however, that the omission of the property from Exhibit A was the result of inadvertence. Thus, the claim that Tate's authority was ratified de-

pends on his own oral testimony. We can assume, without deciding, that the option agreement, if listed in Exhibit A, would have been ratified. Nevertheless, we have held that ratification by a principal of the act of a purported agent in attempting to sell real estate must itself be contained in a writing. *Allegany Gas Company, to use v. Kemp,* 316 Pa. 97, 174 Atl. 289 (1934). See also *Luzerne Township v. Fayette County,* 330 Pa. 247, 199 Atl. 327 (1938), *Restatement (Second), Agency,* §93(2), comment *b* (1958). Thus, neither the agreement of July 1 nor Tate's testimony satisfies the requirement of the Statute.

The second writing upon which appellant rests his claim of ratification is a letter dated July 17, 1965, from Moffat as President of Parmoff to Tate. That letter provides in part: "In order to clarify your relationship with the Parmoff Corporation and in accordance with the agreement recently executed between us, and the oral arrangements for future disposition of property, I think it should be clearly understood between us that no agreement for the sale of real estate will be considered binding upon this corporation until a proposed written agreement has been signed by some officer of this company." Appellant argues that this document is a repudiation of past practice, and in consequence an admission of Tate's prior status as agent. This is not the clear meaning of the letter. It contains no term of revocation and on its face merely states the existing relationship between the parties at a time when the ownership of Parmoff and Moffat's participation in its management were subject to change. Taken together or separately, the agreement of July 1 and the Moffat letter of July 17 reveal no admission of the option agreement or ratification of Tate's status as agent for Parmoff.

On the facts of this case the court below was entirely correct in concluding not only that the Statute

had not been satisfied but also that the negation of Tate's authority to act as agent, set forth in the agreement of January 19, 1954, had not been overcome. In light of these conclusions, cancellation of the option agreement, as requested by appellee, was a proper exercise of equitable jurisdiction.

Decree affirmed. Costs on appellant.