402 A.2d 1061

George J. ROSKWITALSKI and Helen Roskwitalski, his
wife, Appellees,

v.

Peter Wheeler REISS and William C. Mickle, Trustees of the
Armella B. Demmler Trust, as substituted defendants for de-
fendant Armella Demmler, widow, now Deceased, and Robert
Skultety.

**Appeal of Robert SKULTETY.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Decided May 4, 1979.

30

Thomas A. Lazaroff, Pittsburgh, and with him Spencer D. Hirshberg, Pittsburgh, for appellant.

John B. Nicklas, Jr., Pittsburgh, and with him Joel M. Walker, Pittsburgh, for appellees Roskwitalski.

Before VAN der VOORT, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from the Order of the court below quieting title to a certain piece of real estate in appellees,[1] plaintiffs below, and dismissing appellant's exceptions thereto. George W. Jones, a real estate broker of some fifty years experience, was retained to list real estate situate in Ross Township, Allegheny County. The property was owned by the Trustees of the Armella B. Demmler Trust.

---

1. Although we decide this appeal on its merits, we do not thereby express approval of the manner in which the action was brought.

The listing agreement was executed by Jones and Armella B. Demmler.[2] The agreement was a copyright standard form purchased in quantity by Jones from a legal stationer; Jones testified that he had been using substantially the same form for at least thirty years.

On May 2, 1975, the Roskwitalskis gave Jones an earnest money deposit of $5,000.00 on the Demmler property. Jones prepared a standard form titled Agreement of Sale by Writing a description of the property, the price ($32,500), and other information in the spaces left blank for that purpose. The Roskwitalskis then signed the document as purchasers, and Jones signed as witness to their signatures.

On May 7, Robert Skultety, appellant herein, offered Jones $40,000 for the property. Skultety then signed an Agreement of Sale of the same (standard) form as that signed by the Roskwitalskis, and Jones signed, in a place reserved for that purpose, as a witness to Skultety's signature. The Agreement of Sale forms signed respectively by Skultety and the Roskwitalskis were sent by Jones to Mrs. Demmler in Arizona. She signed the form containing Skultety's signature on the appropriate line for a party's signature and returned the executed Agreement to Jones. Jones returned to the Roskwitalskis their earnest money deposit check accompanied by a letter from Jones explaining that Mrs. Demmler had accepted an offer of $40,000 and had formally rejected the Roskwitalskis' offer of $32,500.

The Roskwitalskis brought suit against the Demmler interests (as holders of the legal title to the property) and Skultety, claiming that a contract for the sale of the property at the price of $32,500 had been formed between Mrs. Demmler and them when Jones and the Roskwitalskis placed their signatures upon an Agreement of Sale form bearing

2. The court below found, and it is not disputed on this appeal that Mrs. Demmler had authority to sell the property. The Roskwitalski originally included her as a defendant, alleging that she held legal title to the disputed property. She died after suit was filed, however, and the Trustees were brought in as substituted defendants.

that price term, and that, therefore, they were entitled to the property at that price. The court below concluded that 1) Jones had the authority to enter into a contract for the sale of the Demmler property on behalf of Mrs. Demmler; and 2) the document bearing the signatures of Jones and the Roskwitalskis was a properly executed contract for the sale of the property. We hold that the lower court committed error in so doing, and reverse.

## I.

█ Jones had no authority to enter into a contract for the sale of the Demmler property. The listing agreement between Jones and Demmler contained the following language:

> [T]he undersigned hereby gives you the sole and exclusive right to sell said property . . . for the sum of Thirty-two thousand Five Hundred Dollars on the following terms: Cash $ All, is possible.

The court below apparently based its conclusion that Jones had authority to sell the property upon "the specific intention of Mrs. Demmler as stated" by the language quoted above. While Authorization "to sell" may ordinarily be interpreted to mean that an agent is empowered to make a contract for the sale of the principal's property, Restatement (Second), Agency § 53, the meaning of such a term is quite narrow where real property is involved:

> Unless the price and other terms have been completely stated by the principal, it is the normal inference that an agent employed "to buy" or "to sell" land and not given a formal power of attorney is authorized merely to find a seller or a purchaser with whom the principal is to conduct the final negotiations. This inference is strengthened if the agent is a broker who ordinarily merely solicits; even where the complete terms have been set out, it is ordinarily inferred that such a person is merely employed to find a customer. Authority to accept or to make a conveyance

of land for the principal is found only if clearly expressed in the authorization or clearly indicated by the circumstances.

*Id.* at comment b; *see also* Sell, *Agency* 40 (1975); Annot., 43 A.L.R.2d 1014 (1955). This is the law in Pennsylvania. *Gorsuch v. Berman*, 270 Pa. 8, 112 A. 750 (1921).

This result is also supported by the Rules of the State Real Estate Commission, which is a state agency. *See* 63 P.S. § 432(e). The Commission's rules are promulgated in the Pennsylvania Code, and courts must take judicial notice thereof. 45 Pa.C.S. § 506.[3] The Rules state that no exclusive sales contract shall contain any provision giving to a broker the power "to execute a signed agreement of sale for the owner." 49 Pa.Code § 35.91(c)(4). As an example of a contract in full compliance with the above (and other) Commission requirements, the Code contains the text of an agreement, quoted below in relevant part:

## EXCLUSIVE LISTING CONTRACT

The undersigned hereby appoints _____ as the sole and exclusive agent for, and grants to said agent the exclusive right to sell, premises located at _____ for the sale price of $_____. . . .

49 Pa.Code § 35.91(d). This clause is substantially identical to the language of the listing agreement here at issue. While the Rules of the State Real Estate Commission may not be binding on this court, they should be accorded great weight as the product of the peculiar expertise of an administrative agency. *See Feingold v. Bell of Pa.*, 477 Pa. 1, 5, 383 A.2d 791, 793 (1977). This is particularly true where, as in the instant case, those Rules embody the controlling case

---

**3.** The court below held that these Rules govern only the relationship between a broker and his principal and therefore were inapplicable to the case at bar. We see no basis for this distinction. The Rules apply to all activity of a Broker, regardless of the Status of other parties involved.

law of Pennsylvania which mandates the result herein. See *Gorsuch,* supra.

■ The court below held that the Demmler Trustees, who were residents of Arizona, gave Jones express authority to sell the property because, as non-resident principals, they deemed it expedient to do so. According to the lower court, power to convey was thus indicated by the circumstances. But much more than residence of the principal in a foreign state must be found in order to support such a finding. There having been, in this case, no formal power of attorney conveying such authority, the Restatement indicates that the result is controlled by the normal business of the agent:

> An agent of a non-resident principal is likely to have wider authority than if the principal were nearby. On the other hand, the fact that the business of the agent is primarily that of soliciting, or that agents ordinarily do not sell, indicates that he is authorized to do no more than find a customer. The inference that the agent had authority to contract for sale or to convey is more easily made in the cases of chattels than in the case of land.

*Restatement,* supra, comment a.

The terms on which the property was to be sold were not fully set out in the listing agreement. This again reduces support for the trial court's conclusion that authority could be implied by the circumstances. The terms on which the purchase price is to be paid are stated merely as "Cash, All if possible." This indicates that, if an acceptable buyer prepared to pay the full price in cash cannot be found, other payment arrangements might be made, but such arrangements are not specified in the agreement or any other communication between Jones and the Demmler interests. We need go no further than this to find in error the conclusion of the lower court that complete terms for the purchase of the property were stated in the "totality of communications between the principal and the broker." The case at bar does indeed fall within the general rule as stated in the Restatement, *supra,* at comment b.

## II.

■ Upon concluding that Jones was authorized to enter into a contract to sell the Demmler property, the court below held that he had exercised that power by signing an Agreement of Sale form which was also signed by the Roskwitalskis. The court made no finding on the issue whether Jones signed as a party or as a witness, but stated merely that the "agreement was executed by the PLAIN-TIFFS and contains the signature of DEMMLER'S agent, JONES." Mr. Roskwitalski testified that he could not recall what his belief concerning the purpose and import of Jones's signature on the document had been at the time Jones signed it. Jones testified that, in his experience with such matters, witnesses signed in a certain place, and that he had signed the document herein at issue in that place in order to witness the Roskwitalskis' signatures. There is no evidence to show that Jones signed the document for any other purpose.

■ There is also no evidence to support the conclusion of the court below that Jones possessed apparent authority to execute a contract for sale of the Demmler property. Jones testified that he had not told the Roskwitalskis that he had such authority, and letters from the Demmler Trustees to Jones containing information about the valuation and income of, and taxes on, the property and certain other matters would not cause a reasonable man to believe that Jones was so authorized. *See Apex Financial Corp. v. Deckler,* 245 Pa.Super. 439, 443, 369 A.2d 483, 485 (1976). In any event, apparent authority is insufficient as a matter of law to permit an agent to enter into a contract for the sale of his principal's real property. Such actions by an agent must be "lawfully authorized by writing[.]" 33 P.S. § 1; *see Fiegelman v. Parmoff Corp.,* 435 Pa. 461, 257 A.2d 575 (1965).

The Order of the court below is hereby reversed and the cause remanded for further proceedings not inconsistent with this Opinion.