**KENTUCKY REAL ESTATE COMMISSION,**
Appellant,

v.

**Bill KACHLER, Appellee.**

**No. 90–CA–000935–MR.**

Court of Appeals of Kentucky.

Nov. 22, 1991.

John L. Ackman, Jr., Louisville, for appellant.

Robert G. Zweigart, Maysville, for appellee.

Before HAYES, MILLER and SCHRODER, JJ.

SCHRODER, Judge.

This is an appeal from an opinion and order entered in the Mason Circuit Court reversing an administrative decision of the Kentucky Real Estate Commission in a disciplinary proceeding against a broker. In the appeal below, both parties agreed to the statement of facts adopted by the circuit court in its findings and we, likewise, adopt them as our own:

*June 8, 1988* Commonwealth Mortgage Assurance Company ("CMAC") entered into an exclusive agreement with Petitioner—Kachler to list for sale at $31,650 a house and lot on Jersey Ridge in Maysville, Kentucky. CMAC, located in Philadelphia, had insured Buffalo Trace Regional Housing Authority ("BTRHA") against loss on a mortgage loan and subsequently was assigned equitable title after the property was purchased by BTRHA at Master Commissioner foreclosure sale.

*June 22, 1988* Respondent—Tincher signed an offer to purchase CMAC's property for $31,650. The sales agent was Wanda England who worked for Kachler.

*June 22, or June 23, 1988* William F. Lowe signed an offer to purchase CMAC's property for $32,000. The sales agent was Roseann Palmer who worked for Kachler.

*June 24, 1988* Kachler communicated both purchase offers to CMAC as soon as he could. CMAC rejected Tincher's offer. Neither purchase offer was ever signed as accepted by or on behalf of CMAC. CMAC advised Kachler that it would sell only to the highest and best bidder and instructed Kachler to not lose the sale. England and Palmer notified their respective purchase offerors that their offers had been rejected by CMAC and that Kachler would auction the prop-

erty between them on June 27th if they were interested and had their financing arranged.

*June 27, 1988* Neither Tincher nor Lowe protested the auction. Tincher was the high bidder at $36,300 and signed a new purchase offer.

*July 5, 1988* CMAC signed its acceptance to Tincher's purchase offer for $36,300.

*July 7, 1988* CMAC's sale to Tincher was closed by BTRHA for CMAC.

*August 8, 1988* Tincher filed a complaint with KREC that his offer preceded Lowe's offer and should have been closed by CMAC without auction. He alleged damages of $4,650, the difference between his two purchase offers.

*May 25, 1989* KREC, through its Hearing Officer, an attorney, heard the testimony of the Tinchers, England, Palmer, Robert F. Money (BTRHA), Frank Eddy (KREC investigator), and Kachler. KREC was represented by its staff attorney. Kachler was not represented by counsel.

*July 18, 1989* KREC's Hearing Officer made Findings of Fact, Conclusions of Law and Recommended Decision. The Findings concluded that Tincher's purchase offer of June 22d created a binding contract which Kachler induced CMAC to breach by subsequently auctioning the property, in violation of 201 KAR 11:110, and that Kachler's conduct was "improper" under KRS 324.160(1)(r) but not fraudulent, and recommended six months probation of Kachler's real estate brokerage license and payment by him of $4,650 to Tincher.

*October 4, 1989* KREC's Order adopted the Hearing Officer's Findings and Conclusions, but contrary to his Recommended Decision ordered suspension of Kachler's license for two years to be probated upon Kachler's payment of $4,650 to Tincher.

On November 2, 1989, Kachler appealed KREC's suspension to the Mason Circuit Court. On February 1, 1990, the court rendered its opinion and judgment reversing KREC's decision. From that judgment, KREC now appeals.

In its opinion below, the circuit court based its reversal of the sanctions against Kachler on the fact that, as a matter of law, a contract did not exist between Tincher and CMAC under the facts. Hence, Kachler could not have induced the alleged breach. On appeal to this Court, KREC argues that the lower court erred in so holding. KREC maintains that CMAC's listing of its property for sale with Kachler for $31,650 constituted a valid offer to sell which Tincher accepted when he offered to pay the listing price, such that an enforceable purchase contract between CMAC and Tincher resulted. This issue of whether a listing agreement constitutes a valid offer for sale to a third party has never been squarely addressed by a court in Kentucky.

In its argument, KREC relies solely on the case of *Palfreeman v. Broderick,* 306 Ky. 538, 208 S.W.2d 736 (1948). In *Palfreeman, supra,* the property owners entered into a listing agreement with Broderick to sell their property for $13,000 until April 15. On March 13, the first prospective buyers signed a purchase offer for $15,000. Thereafter, on March 17, the second prospective buyers submitted a written purchase offer for $15,000. The owners sold the property to the second prospective buyers, claiming that they rescinded the listing contract after the first purchase offer and, therefore, they did not owe Broderick a real estate commission for the sale. The lower court apparently found or the parties simply accepted that a valid contract existed between the first prospective buyers and the owners, and that precise issue was never appealed to or addressed by then Court of Appeals. Rather, the issues addressed by the Court were whether Broderick was entitled to his real estate commission and whether the second prospective buyers were bona fide purchasers for value without notice. Accordingly, contrary to KREC's position in the present case, *Palfreeman, supra,* does not stand for the proposition that a listing agreement is a valid offer to sell the subject property. In fact, the case law in Kentucky and other jurisdictions is quite the opposite. As was stated in the lower court's opinion in the instant case:

The usual exclusive listing agreement between an owner of real property and real estate broker is merely a contract of employment for the broker to procure purchase offers and submit them to the owner for acceptance. *Frank, Kentucky Real Estate Professionals and the Law* §§ 3.04, 4.01 (1986). Authority "to sell" does not constitute a power of attorney or otherwise empower the broker to bind the owner. *Forbis v. Honeycutt,* [301 N.C. 699] 273 S.E.2d 240 (N.C.1981) The broker may not exceed his express powers, and so may not bind the owner unless his listing agreement confers explicit authorization to do so. *Gaines v. Murphy,* 239 S.W.2d 453 (Ky. 1951); *Kramer v. Mobley,* [309 Ky. 143] 216 S.W.2d 930 (Ky.1949); *Huddleston v. Disney,* [304 Ky. 164] 200 S.W.2d 109 (Ky.1947); *Speiss v. Martin,* [192 Ky. 211] 233 [232] S.W. 615 (Ky.1921). There is no implied authority to bind the owner under a mere listing. *Gaines, supra;* 12 Am.Jur., Brokers § 71. Apparent authority of a real estate agent to bind his principal is insufficient as a matter of law. *Roskwitalski v. Reiss,* [266 Pa.Super. 29] 402 A.2d 1061, 1065 (Pa.1979). One who deals with a broker acts at his peril and must acquaint himself with the strict extent of the broker's authority. *Gaines, supra,* at 455.

Moreover, it has been explicitly held that a listing agreement does not constitute an offer to any third party. *Garrett v. Gerard,* 156 F.2d 227 (10th Cir., 1946); *Bernstein v. Yee Wong,* 236 F.Supp. 5 (D.C.1964); *Holland v. Hannan,* D.C.App., 456 A.2d 807 (1983); *Brezina v. Hill,* 195 Neb. 481, 238 N.W.2d 903 (1976). Nor can a prospective purchaser be considered a third party beneficiary to a listing agreement. *UTL Corporation v. Marcus,* Tex.App., 589 S.W.2d 782 (1979). Such holdings are compelled by the Statute of Frauds in Kentucky which requires a real estate sales contract to be in writing and signed by the party to be charged. KRS 371.010(6). This is so because, as the lower court so aptly stated, "(t)he signature of the owner of real estate on a broker's

listing agreement is not tantamount to or legally sufficient as his signature required to accept a purchase offer on a separate sales contract."

 Accordingly, when a broker produces a purchase offer for the exact amount and in keeping with the other terms specified in the listing agreement, the owner is not bound to the purchase offeror if he, for whatever reason, does not want to sell to that offeror. However, in such case, the broker is entitled to a commission for his performance of the listing agreement.

In the present case, we conclude that the lower court was correct in ruling KREC's finding that a contract existed between Tincher and CMAC erroneous as a matter of law. Hence, we affirm the judgment of the Mason Circuit Court reversing the decision of KREC.

All concur.