THOMPSON, JUDGE:
*101 Valerie P. Wagner appeals from an order of the Jefferson Family Court denying her motion to hold Kevin J. Wagner in contempt for violation of a provision in the parties' property settlement agreement requiring Kevin to make the monthly mortgage payments on the marital residence and for failure to make property distribution equalization payments as required by the agreement. We conclude the settlement agreement is unambiguous as to when Kevin's obligation to pay the mortgage terminated and the family court erred when it denied Valerie's motion to hold Kevin in contempt. We affirm the family court's denial of Valerie's contempt motion as it relates to the property distribution equalization payments.
Valerie and Kevin were married in 1985 and have two children, who were ages fifteen and ten when the parties divorced in 2008. The parties entered into a property settlement agreement that was incorporated into the divorce decree.
Pursuant to the settlement agreement, each party agreed that in reaching the agreement they relied on the financial disclosures completed by each party. In those disclosures, it was stated that Valerie's monthly income was $3,200 per month while Kevin's was $6,000 per month. Kevin was to pay Valerie $150,000 as a property settlement equalization payment resulting from Valerie's waiver of her interest in the parties' various businesses and assets. Kevin agreed to pay Valerie $50,000 upon execution of the property settlement agreement and pay the remaining $100,000 at the rate of $1,340 per month commencing December 1, 2007. The property settlement agreement also provided that Valerie would have exclusive use and control of the marital home and that Kevin "shall make the mortgage payments thereon until such time as Valerie decides to sell the property." Upon the sale of the home, the net proceeds were to be divided between the parties. In the agreement, Valerie waived maintenance.
In December 2008, the parties entered into an agreement wherein Kevin would quitclaim all his right, title and interest in the marital home for a credit of $75,000 towards the remaining balance on the original $150,000 equalization payment obligation and executed an acknowledgment of that agreement. Kevin executed a quitclaim deed to Valerie on December 4, 2008.
Valerie first listed the marital home for sale in August 2011, but did not receive an offer for her asking price and the house did not sell. After Kevin stopped making the mortgage payments in June 2013, the home was foreclosed upon and sold through a short sale for $420,000 on January 2, 2014.
On February 19, 2014, Valerie filed a motion for contempt against Kevin for failing to pay the mortgage, failing to make the property distribution equalization payments and failing to pay child support payments in violation of the property settlement agreement.
Valerie argued the phrase "until such time as Valerie decides to sell the property" means Kevin was required to pay the mortgage until she accepted an offer on the house or until the house actually sold. Kevin disagreed with that interpretation and argued that his obligation to make the mortgage payment ended when Valerie listed the house for sale in August 2011.
*102 The family court held a hearing on the contempt motion. Approximately seven minutes into the hearing, Valerie's counsel attempted to introduce evidence of the parties' income when the settlement agreement was reached as evidence that it could not have been the intent of the parties' that Valerie would pay the mortgage before the home sold because her income was below the monthly payment. The family court ruled that such evidence was irrelevant stating as follows:
The agreement says what it says. The agreement doesn't say ... I'm just saying it is very simple. She works for the Commonwealth Attorney's Office. I mean whatever ... the agreement says that he continues to make the mortgage payments thereon until such time as she decides to the sell the property-not until she sells the property.
The hearing continued, and the following evidence was produced.[2] Valerie listed the property for sale in 2011 and, after that time, Kevin continued to make the mortgage payment until June 2013. Kevin testified he did so not because of any obligation under the property settlement agreement, but because the children were living in the home and his name was on the mortgage note. The property was listed with three different listing agents before a short sale of the property was arranged. To satisfy the deficiency on the mortgage, Kevin paid $10,000 at the short sale closing and signed a promissory note for $29,124.64.
Valerie testified that in December 2008, she signed a document captioned "Acknowledgment" giving Kevin a $75,000 credit towards the remaining balance on his equalization payment in exchange for a quitclaim deed for his interest in the marital home. She testified she signed the acknowledgement because Kevin pressured her to sign the document and told her if she did not, she would likely lose the home because he was in financial crisis and creditors would place liens on the home. Valerie also testified to instances of domestic violence by Kevin and that his alcohol and drug problems caused her to divorce him. She testified she was afraid of Kevin and of losing the home. Valerie testified that after having the acknowledgment in her possession from August 2008 until December 2008, she signed the acknowledgment and the quitclaim deed in her home without a notary present. Kevin testified both instruments were signed at a bank by both parties with a notary present.
In its written order, the family court confirmed its bench ruling that the phrase "decides to sell" is unambiguous, ruling that "[t]he Agreement clearly states that Kevin will pay the mortgage until Valerie decides to sell the property-not until the property is sold." Consequently, the family court ruled that Kevin had no legal obligation to pay the mortgage after Valerie listed the home for sale in 2011, and he did not violate the settlement agreement. The family court further found that Valerie received more than $100,000 over six years and, therefore, Kevin did not violate the agreement by failing to make the property equalization payment as required.[3]
Valerie filed a motion pursuant to Kentucky Rules of Civil Procedure (CR) 52.04 requesting that the family court make a specific finding that "decides to sell" is *103 unambiguous or is ambiguous. She further requested specific findings as to whether the acknowledgment was an arm's length agreement that was open and fairly negotiated, voluntarily entered and conscionable.
The family court denied the motion to the extent that it requested additional findings regarding the phrase "decides to sell the property." The family court ruled that the issue of conscionability was not addressed at the hearing but made additional findings regarding the validity of the acknowledgment. The family court found that Valerie was a paralegal and understood the terms of the signed and notarized acknowledgment and had access to legal advice.
A property settlement agreement is a contract and, therefore, governed by contract law. Frear v. P.T.A. Indus., Inc. , 103 S.W.3d 99, 105 (Ky. 2003). "The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 384 (Ky.App. 2002). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." City of Louisa v. Newland , 705 S.W.2d 916, 919 (Ky. 1986). When determining the parties' intent, certain rules of construction are applicable.
Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties. Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence.
Cantrell Supply, Inc. , 94 S.W.3d at 385 (citations omitted). An ambiguity exists "if a reasonable person would find it susceptible to different or inconsistent interpretations." Id. Whether a contract is ambiguous is a question of law for the courts and is subject to de novo review. Id.
While we agree with the family court that the property settlement agreement "says what it says," the common meaning of the phrase "decides to sell" as used in the agreement compels this Court to reverse.
Kevin's argument - listing the property proved Valerie's decision to sell - is not supported by case law. The act of listing property for sale with a real estate broker is proof only of the owner's decision to solicit offers, and not proof of her decision to sell. See Kentucky Real Estate Comm'n v. Kachler , 819 S.W.2d 41, 43-44 (Ky.App. 1991) (lawful decision not to sell property even though solicited offer perfectly mirrored terms of listing agreement). No matter how much a seller wishes for an offer, without one, there is no decision for the seller to make.
A property owner's decision to sell is evidenced by acceptance of an offer to purchase. See, e.g., PBI Bank, Inc. v. Signature Point Condominiums LLC , 535 S.W.3d 700, 717 (Ky.App. 2016) (contractual right of refusal triggered by "decision to sell the property at a specific price and under specific terms" based on third party's bona fide offer). Kevin, apparently seeing no ambiguity in the contract, continued to pay the mortgage for 25 months after Valerie listed the property. Only after Kevin could no longer afford the mortgage payments did he argue that listing the property was proof of Valerie's decision to sell. If actions speak louder than words, Kevin's "course of actual performance ... must be considered the best indication of what [he believed they] intended the writing *104 to mean[.]" Potts v. Draper , 864 S.W.2d 896, 899 (Ky. 1993).
Looking at the four corners of the property settlement agreement, the lack of any ambiguity in the phrase "decides to sell" is apparent. The agreement states that Valerie is to have exclusive use and control of the property, in part, "because of the needs of the children, as well as other considerations and concessions made herein." The agreement reveals that those concessions were considerable interests in various business interests and, under the agreement's terms, she did not receive maintenance. The agreement also states that the parties would equally divide the net proceeds upon the sale of the property. These provisions make little sense if Kevin's obligation to pay the mortgage terminated merely upon listing the property for sale requiring Valerie to assume the payment until the house was sold.
We note that we do not agree with Valerie that the phrase "decides to sell the property" means Kevin had to pay the mortgage until the property was conveyed to a purchaser. Conveyance of title "is that very thin slice in a continuum that starts with a listing agreement and usually ends with the closing, ... the final steps of the transaction whereat the consideration is paid, mortgage is secured, deed is delivered or placed in escrow, etc[.]" Countrywide Home Loans, Inc. v. Kentucky Bar Ass'n , 113 S.W.3d 105, 117 (Ky. 2003) (internal quotation marks and citations omitted). Hypothetically, if Valerie's decision to sell had been demonstrated by her acceptance of an offer (which, of course, never occurred), equitable title would have passed to the buyer. Sebastian v. Floyd , 585 S.W.2d 381, 382 (Ky. 1979) ("equitable title passes to the buyer when the contract is entered. The seller holds nothing but the bare legal title, as security for the payment of the purchase price."). Kevin would have had no say in the selection of that buyer, i.e. , the person in whom Valerie would have vested equitable title upon acceptance of the offer. Justifiably then, the risk of the buyer's default would have been Valerie's to bear; the onus to do everything necessary to promptly perform the contract and merge equitable and legal title in the new owner would be hers. That would include paying the mortgage from the date she expressed her desire to sell the property - when she accepted the offer - until the date the property transfers. However, because an offer and acceptance never occurred, the point is moot.
It is not moot, however, that Kevin owed the contractual duty to pay the mortgage until Valerie decided to sell - an event that never occurred. When Kevin stopped paying, he breached the contract. Foreclosure resulted, and Kevin should be held in contempt for failing to perform the contract as he agreed.
The second issue presented is whether the family court erred when it concluded that the acknowledgment is enforceable.[4] Valerie argues that the family court erroneously failed to consider Kevin's history of domestic violence. She contends that her signature on the acknowledgment was made under civil duress.
The term "duress," as it is used by the law, means such violence or threats made by the party or some person acting for or through him, or by his advice or counsel, as are calculated to produce on a person of ordinary intelligence a just fear of great injury to person.
Bond State Bank v. Vaughn , 241 Ky. 524, 44 S.W.2d 527, 528 (1931) ; see also *105 Boatwright v. Walker , 715 S.W.2d 237, 243 (Ky.App. 1986). While what constitutes duress is a question of law, "whether duress exists in a particular case is a question of fact." Crestmark Bank v. Electrolux Home Prod., Inc. , 155 F.Supp.3d 723, 744 (E.D. Mich. 2016) (quoting Norton v. Michigan State Highway Dep't , 315 Mich. 313, 319-20, 24 N.W.2d 132 (1946) ). Questions of fact are reviewed under the abuse of discretion standard. Mays v. Mays , 541 S.W.3d 516, 524 (Ky.App. 2018).
Although domestic violence may be a factor in determining whether a property settlement agreement or modification of that agreement was entered into under civil duress, it does not require that any such agreement be deemed unenforceable. In this case, there was testimony regarding past domestic violence but no evidence of violence or threats of great physical injury to Valerie if she did not sign the acknowledgment. As noted by the family court, Valerie is a paralegal and has more than sufficient intelligence to understand the acknowledgment. During the time Valerie had the unsigned acknowledgment in her possession, she had ample time to review the document or consult with counsel. We conclude that the family court did not abuse its discretion.
For the reasons stated, we hold that the property settlement agreement is unambiguous in regard to when Kevin's obligation to pay the mortgage terminated and we reverse and remand to the Jefferson Family Court to hold Kevin in contempt. We otherwise affirm.
ALL CONCUR.

Despite the family court's ruling that the agreement was unambiguous, some of the testimony at the hearing would be relevant only to the issue of the meaning of "decides to sell the property" and not the remaining issues. However, it is clear from the court's final order that it only considered the words "decides to sell the property."

The family court found that Kevin was in arrears on child support. Kevin filed a cross-appeal that he withdrew.

Kevin limits his argument on appeal to the issue of civil duress. However, we agree with the family court that there is no evidence that the acknowledgement is unconscionable.