RENDERED: OCTOBER 30, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0873-MR

TERRY CHARLES MARSHALL                  APPELLANT

v.       APPEAL FROM MAGOFFIN CIRCUIT COURT
HONORABLE DWIGHT S. MARSHALL, JUDGE
ACTION NO. 12-CI-00109

PEGGY LOUVENIA MARSHALL               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, JONES, AND KRAMER, JUDGES.

JONES, JUDGE: The Appellant, Terry Charles Marshall ("Terry"), appeals from the Magoffin Circuit Court's order denying his motion for miscellaneous relief regarding certain personal property and furnishings the Appellee, Peggy Louvenia Marshall ("Peggy"), requested pursuant to the parties' Separation and Property Settlement Agreement as incorporated by reference into the circuit court's final

decree of dissolution. Having reviewed the record and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

Terry and Peggy were married on August 6, 1977, in Mingo County, West Virginia. During their lengthy marriage, the parties acquired a substantial amount of real and personal property, including two fully furnished homes of considerable size. The larger home is located at 1150 Delong Lane, Lexington, Kentucky ("Delong property"). The other home is located at 425 Kentucky Street, Salyersville, Kentucky ("Kentucky Street property").

In April of 2012, Terry petitioned for dissolution of the parties' marriage. After years of highly contentious litigation, and with both parties represented by counsel, the parties entered into a Separation and Property Settlement Agreement ("Agreement"). Both parties signed the Agreement. The Agreement was found to not be unconscionable by the circuit court and was incorporated by reference into the circuit court's final decree of dissolution entered on September 12, 2018.

Pursuant to Paragraph 7 of the Agreement, Terry was awarded both homes.[1] Paragraph 8 of the Agreement, which addresses division of the parties'

---

[1] Peggy's release of her interest in the Delong property was contingent on her receipt of a $5,500,000.00 payment from Terry.

personal property and belongings, including the furniture and related items in the

parties' two homes, is at the heart of this appeal.  It states:

> 8.  PERSONAL PROPERTY.  The parties are each awarded his or her personal belongings, including but not limited to clothing, jewelry, luggage, memorabilia, and hand bags.  [Terry] currently has possession of [Peggy's] clothing and personal belongings maintained at the Kentucky Avenue property and said items shall be delivered to [Peggy] at the address directed by her within 30 days of entry of this Agreement, pursuant to the terms set forth by this Court by Order entered July 17, 2015.  Husband has remaining clothing and personal items at the Delong Lane property and he shall be awarded those items.  [Peggy] shall be entitled to retrieve any remaining clothing or personal items from the Kentucky Avenue property within 30 days of entry of this Agreement.  The parties agree to cooperate in scheduling an agreed upon time to retrieve their various items.
>
> *Wife shall be entitled to choose furnishings, household goods, and accessories from 1150 Delong Lane, Lexington, Kentucky and 425 Kentucky Street, Salyersville, Kentucky to furnish her new residence.* ***These items shall include but not be limited to*** *the rooster chest, Kitchen Aid mixer, dishes, cookbooks, bedroom furniture, secretary desk, sofas, tables, chairs, lamps, and various accessories.  Wife shall provide a list of the items she will remove and provide same to Husband's counsel within 10 days from the date of this Agreement.  Any items remaining will be the sole property of husband.*

(Emphasis added.)

Pursuant to Paragraph 8 of the parties' Agreement, on or about September 17, 2018, Peggy provided Terry a six-page, itemized list of furnishings and accessories that she wanted to remove from the two residences. The list was divided into two sections, one for the Delong property and one for the Kentucky Street property. The sections were further broken down by the specific item(s) and the rooms where those items were located.

With respect to the Delong property, Peggy identified items from the: (1) upstairs storage room; (2) downstairs master; (3) family room; (4) pantry; (5) upstairs master; (6) bar; (7) downstairs bedroom; (8) first-floor living room; (9) billiards room; (10) lower-level media room; (11) dining hallway; (12) entrance hall; (13) office; (14) third upstairs bedroom; (15) area near the garage; (16) kitchen dining area; (17) front right upper hallway; (18) their son Terence's bedroom; (19) connector hall to the ping-pong room; (20) patio; (21) powder room; (22) kitchen washroom; (23) top landing; and (24) room over the garage. The items included several pieces of large furniture, rugs, lamps, framed artwork, nine television sets, a treadmill, and numerous home décor items such as candlesticks, vases, and mirrors. With respect to the Kentucky Street property, Peggy identified items from the: (1) sunroom; (2) master bedroom; (3) formal sitting room; (4) side door entrance; (5) formal dining room; (6) pool house; (7) bedroom hallway; and (8) main entry. The items from these rooms included

miscellaneous jewelry, collectibles, china, and quilts as well as a few pieces of furniture (secretary desk, hall coat tree, and a television cabinet).

Upon receipt of Peggy's itemized list, Terry filed a motion with the circuit court seeking to compel Peggy to "provide a list of personal property that is consistent with the parties' Agreement." Terry asserted the list Peggy submitted was overinclusive and exceeded the scope of the parties' intentions as expressed in Paragraph 8 of their Agreement. Terry maintained that emails exchanged between the parties' counsel on August 8, 2018, demonstrate that Paragraph 8 was intended to allow Peggy to select a variety of items to furnish her new home, and did not entitle her to take whatever she desired from the two residences. Terry explained that as part of the negotiated agreement, it was understood and agreed between the parties that the items that Peggy was entitled to take would generally include: two bedroom suites, a couple of sofas, tables, and chairs, the stands in the foyer of the Delong property that hold the silk flowers, as well as a desk and a dresser from the Kentucky Street property. According to Terry, while the email exchanges contemplated that the specific property to be awarded to Peggy from the residences was supposed "to be identified on an exhibit in the settlement agreement," this was not done because the purpose of Paragraph 8 was to allow Peggy to select furnishing appropriate for her new residence and, at the time the parties executed the Agreement, Peggy had not yet found a new residence for herself.

Peggy responded that the emails were part of the preliminary negotiations between the parties and should not be considered by the circuit court. She argued the Agreement was unambiguous insomuch as it was clear that Peggy was allowed to select whatever items she desired from the two residences to furnish her new residence so long as she provided Terry with an itemized list prior to removing the items.

On January 17, 2019, the circuit court denied Terry's motion. Therein, the circuit court found that "the listing of items provided by [Peggy] on September 17, 2018 . . . is consistent with the terms of the agreement, and therefore, [Peggy] is entitled to all items, as requested in her listing of personal property and furnishings." Thereafter, Terry filed a motion to alter, amend, or vacate the order, or in the alternative for additional findings. The circuit court refused to alter its ultimate conclusion; however, as requested, it amended its prior order to include additional findings as follows:

> "The Court having heard arguments from counsel regarding the review of extrinsic or parole evidence to support the Petitioner's position that there is more than one interpretation of [the] agreement set forth in Paragraph 8 of the Separation and Property Settlement Agreement, titled PERSONAL PROPERTY; this Court finds that there is only one reasonable interpretation of the language within said agreement. The Settlement Agreement states, "Wife shall be entitled to choose furnishings, household goods, and accessories from 1150 Delong Lane, Lexington[,] Kentucky and 425 Kentucky Street, Salyersville[,] Kentucky to furnish her new

-6-

residence.  These items shall include but not be limited to the rooster chest, Kitchen Aid mixer, dishes, cookbooks, bedroom furniture, secretary desk, sofas, tables, chairs, lamps, and various accessories.  Wife shall provide a list of the items she will remove and provide same to Husband's counsel within 10 days from the date of this Agreement.  Any items remaining shall be the sole property of Husband."  Therefore, it is determined by this Court that the language in the agreement clearly does not restrain [Peggy] from her choices of furnishings, household goods and accessories as argued by [Terry] and no extrinsic or parol evidence need be considered for the purposes of interpretation of the agreement pursuant to KRE[2] 408.

Record ("R.") at 338-39.

This appeal followed.

## II. STANDARD OF REVIEW

A property settlement agreement, as incorporated into a decree of dissolution of marriage, is a contract.  *See Wagner v. Wagner*, 563 S.W.3d 99, 103 (Ky. App. 2018); *see also* KRS[3] 403.180(5); *Money v. Money*, 297 S.W.3d 69, 71 (Ky. App. 2009).  "The interpretation of a contract is a matter of law and is reviewed by the Court *de novo*."  *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. App. 2011).

---

[2] Kentucky Rules of Evidence.

[3] Kentucky Revised Statutes.

# III. ANALYSIS

"The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). Where a contract's terms are plain, the court must assign to them their ordinary meaning and enforce the contract as written. *See Bryan v. Massy-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). If the terms of a contract are not ambiguous, the court may not resort to extrinsic or parol evidence. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).

> Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties. Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence.

*Cantrell Supply, Inc.*, 94 S.W.3d at 385 (citations omitted).

Thus, our first task is to determine whether Paragraph 8 of the parties' Agreement is ambiguous. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent[, yet reasonable,] interpretations." *Id*. To determine whether ambiguity exists, we look at the language in the contract.

"[A]n otherwise unambiguous contract does not become ambiguous when a party asserts—especially post hoc, and after detrimental reliance by another party—that the terms of the agreement fail to state what it intended." *Frear*, 103 S.W.3d at 107.

Having reviewed the Agreement, we agree with the circuit court that it is not ambiguous. While the Agreement lists a few specific items of property, it is clear that Peggy was not limited to only these items. The Agreement listed three broad categories of items Peggy was allowed to select from the parties' two residences: furnishings, household goods, and accessories. The only limitations the Agreement placed on Peggy was that items selected from these categories must be used by Peggy for the purpose of furnishing her new residence and that she had to provide Terry a listing of the items within a set amount of time. Any items not selected by Peggy for her new residence within that set period of time would automatically become Terry's sole property.

What the parties discussed prior to execution of the Agreement is of no consequence in the face of this clear and unambiguous language. *Dotson v. Dotson*, 523 S.W.3d 441, 444 (Ky. App. 2017). "It is presumed that the written agreement is final and complete and that all prior negotiations between the parties have either been abandoned or incorporated into the final written instrument." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. App. 2009) (citation

omitted). Had Terry desired to limit Peggy's choice to certain items, to a specific quantity of items, or to a set total value, he could have done so by including such terms in the Agreement. He did not do so. Instead, the Agreement unambiguously gave Peggy a specific period of time to select and list whatever items she desired from the two residences for the purpose of furnishing her new home. There is no other reasonable interpretation of the Agreement. Since the Agreement is not ambiguous on its face, the circuit court did not err in refusing to consider the email exchanges between the parties' counsel to limit Peggy's ability to select items from the residences. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Magoffin Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David J. Guarnieri
Lexington, Kentucky

BRIEF FOR APPELLEE:

Martha A. Rosenberg
Lexington, Kentucky