RENDERED:  SEPTEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1222-MR

TAMMY R. COLE                                                                 APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 17-CI-50059

MARK A. COLE                                                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND McNEILL, JUDGES.

DIXON, JUDGE:  Tammy Cole appeals from an order of the Madison Circuit Court entered on September 19, 2022, requiring her to return two pieces of artwork to Mark Cole, reimburse Mark his purported value of the art, or retain an appraiser of Mark's choosing and pay the value of the artwork, as well as the cost of the appraisal.  After careful review of the briefs, record, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

The parties were married on December 15, 1999. Tammy filed a petition for dissolution of marriage on February 3, 2017. The parties reached a temporary agreement, which included exclusive occupancy of the marital residence by Tammy. Soon thereafter each of the parties filed a Verified Disclosure Statement (VFD); both VFDs indicated that the parties owned 38 pieces of equine art located at the marital residence and valued at $114,630.00.

Eventually, the parties were able to reach a partial Mediation Agreement ("the agreement"), which was approved by the court on June 17, 2019. Pursuant to the "Marital Personal Property" section of the agreement, "artwork" was listed under the husband's column. The circuit court entered a decree of dissolution on August 19, 2019, incorporating the agreement, as well as an addendum read into the record. The portion of the decree awarding personal property to Mark included the exact list first proposed in the agreement, including "artwork," as well as a term from the addendum which specifically identified seven additional pieces of artwork. The decree also included a standard provision that "[t]he parties have previously divided their remaining personal property and each party shall be awarded all items currently in their possession."

On September 18, 2020, Mark filed a motion for return of personal property and for contempt, claiming there were a few additional items of personal

property that were inadvertently omitted from his initial property list but included under the terms of the decree. The omitted property included the two pieces of artwork – oil paintings by James L. Crowe, "Keeneland Turf & Hedge" and "Mare in Field" ("the Crowe paintings") – which are at issue in this appeal. During the hearing, Tammy denied having possession of the Crowe paintings or knowing their whereabouts.

Mark filed a second motion for return of personal property and for contempt on March 19, 2021. Mark's motion included pictures of the Crowe paintings hanging in the marital residence sometime before the separation and an invoice, originally attached to his VFD, which showed the purchase of a few pieces of artwork, in addition to the 38 insured pieces, including Keeneland Turf & Hedge. At the hearing, Mark testified that he realized the two Crowe paintings were not delivered with the rest of the artwork in the winter of 2019 when he was reviewing some old photographs of the marital residence. He waited to file his first motion due to the COVID-19 pandemic and the resolution of other pending matters.

Mark argued a bailment of the Crowe paintings existed, as Tammy had constructive possession by virtue of having exclusive occupancy of the marital residence. He estimated the value of the Crowe paintings to be $15,000.00, using the invoice which indicated he purchased Keeneland Turf & Hedge for $7,500.00.

In response, Tammy produced a more recent photograph, taken three months before the parties' separation, that showed one of the Crowe paintings had been moved after Mark's photographs were taken. She also stated that Mark repeatedly entered the marital residence without her knowledge, maintained control of the residence's security system, and removed some furnishings and equine art prior to entry of the decree.

On appeal, Tammy argues that the circuit court erred when it interpreted the term "artwork," as listed in the decree, to include the Crowe paintings, and that there was insufficient evidence to support the court's ruling.[1]

**STANDARD OF REVIEW**

A property settlement agreement, or mediation agreement as incorporated into a decree of dissolution, is a contract and, therefore, governed by contract law. *See Wagner v. Wagner*, 563 S.W.3d 99, 103 (Ky. App. 2018) (citations omitted); KRS[2] 403.180(5). "The interpretation of a contract is a matter of law and is reviewed by the Court *de novo*." *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. App. 2011). The parties' intentions are to be discerned from the

---

[1] Tammy argues that there was no finding of contempt or dissipation. However, these issues are not presently before us. The circuit court has reserved the contempt issue pending this appeal, and a finding of dissipation is not germane to the enforcement of the decree, nor has Mark asserted dissipation below. A circuit court must first be given the opportunity to rule before an issue can be considered on appeal. *Baker v. Weinberg*, 266 S.W.3d 827, 835 (Ky. App. 2008).

[2] Kentucky Revised Statutes.

four corners of the contract, but when a contract is ambiguous, a court may consider other factors, including parol evidence and the conduct of the parties. *Cantrell Supply, Inc.* v. *Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002); *see also Money v. Money*, 297 S.W.3d 69, 72 (Ky. App. 2009).

The circuit court's findings of fact shall not be disturbed unless they are clearly erroneous, or unsupported by substantial evidence. CR[3] 52.01; *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). The circuit court is in the best position to weigh conflicting evidence and testimony, and it is not for this Court to supplant a different conclusion when faced with the same evidence. *See Truman v. Lillard*, 404 S.W.3d 863, 868-69 (Ky. App. 2012).

## LEGAL ANALYSIS

Tammy contends that the term "artwork" should only be interpreted to mean the 38 paintings as identified in the VFDs of the parties because Mark omitted the Crowe paintings from his previous property lists, and they were not specifically mentioned in either the agreement or the addendum to the decree of dissolution. Furthermore, even if they were in her possession, she asserts that the provision of the decree which awarded each party all property currently in their possession would have awarded the Crowe paintings to her. Mark, on the other hand, argues that the term unambiguously means any and all artwork.

---

[3] Kentucky Rules of Civil Procedure.

By the plain reading of the agreement itself, "artwork" as used in the "Marital Personal Property" section of the agreement encompasses the two contested Crowe paintings. However, the inclusion of the addendum begs the question of why the specific pieces of additional artwork were identified through this supplemental contract provision if "artwork" meant "all artwork" as posited by Mark. Given this ambiguity, we shall consider parol evidence presented in the underlying case and the conduct of the parties.

The VFDs of both parties only mention and value the 38 pieces of insured artwork. However, in addition to the insurance document which identifies and values the 38 pieces, Mark also attached the invoice for Keeneland Turf & Hedge, and five other paintings not included in the list of 38. At a minimum, Tammy was put on notice that Mark was claiming an interest in more artwork than the 38 pieces that were insured.[4]

The parties' course of conduct also supports Mark's claim that the term "artwork" means all artwork in the marital residence. Mark continually claimed the artwork as nonmarital, and Tammy admitted that Mark was the collector of equine art with which he often decorated the marital residence.

---

[4] We note that several of the 38 insured pieces were also oil paintings by James Crowe.

Tammy also exhibited an extreme reluctance to return the 38 pieces of insured artwork, even though it was undisputed that they belonged to Mark.

Considering the circumstances, we conclude that the intention of the parties was for the addendum to merely be a collateral term used to help effectuate the already existing agreement. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Therefore, we agree with the circuit court and interpret "artwork" to include the Crowe paintings.

We next turn to whether sufficient and substantial evidence existed to support the circuit court's conclusion that Tammy was in constructive possession of the paintings.

In the instant case, the photographs depicting the Crowe paintings in the marital residence prior to the parties' separation, the invoice showing the purchase of one of the paintings, the fact that Tammy had exclusive occupancy of the marital residence after the separation, and the fact the Crowe paintings were not found to be in Mark's possession, were sufficient for the circuit court to conclude that Tammy was in constructive possession and control of the Crowe paintings. Tammy countered with only one photograph indicating that one painting had been moved prior to the parties' separation, and the tenuous accusation that Mark could have removed the artwork previously. We also find it compelling, as did the circuit court, that Mark was denied any meaningful

opportunity to take an accounting of any property in the marital residence after the parties' separation. While it would have been unreasonably burdensome to expect Tammy to have cataloged every piece of property in the marital residence, expecting Mark to have done so completely from memory and with only limited access to the marital residence is untenable.

Regarding the value of the Crowe paintings, the invoice supports the assertion that Keeneland Turf & Hedge is valued at $7,500.00 but makes no mention of Mare in Field. Mark estimates its value to be equitable with Keeneland Turf & Hedge because it is a similar work of the same artist. It was within the circuit court's discretion to accept Mark's testimony, considering that Tammy provided no evidence and merely speculated that Mark may have inflated the value. Additionally, the court's order afforded Tammy the opportunity to secure an appraisal of the Crowe paintings, albeit by an appraiser of Mark's choosing at her own expense.

The circuit court's order was based on its interpretation of the term "artwork" and the evidence presented, which we conclude was substantial. *See Young v. Young*, 314 S.W.3d 306, 310 (Ky. App. 2010). While the parties presented contrary evidence and testimony, the circuit court found Mark's more compelling than Tammy's and entered an order enforcing the terms of the parties' decree of dissolution. KRS 403.180(5); *see also Bailey v. Bailey*, 231 S.W.3d 793,

797 (Ky. App. 2007). Accordingly, we find the circuit court's findings of fact were not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the judgment of the Madison Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANT:                BRIEF FOR APPELLEE:

Sean M. Pierson                     James W. Baechtold
Richmond, Kentucky                  Richmond, Kentucky